*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Joseph R. HAVERTY, Sergeant**
United States Army, Appellant

**No. 16-0423**

Crim. App. No. 20130559

Argued November 16, 2016—Decided April 25, 2017

Military Judges: Kirsten V. C. Brunson, David H. Robertson, and James W. Herring

For Appellant: *Captain Cody Cheek* (argued); *Colonel Mary J. Bradley, Major Christopher D. Coleman, and Captain Scott Ashby Martin* (on brief); *Lieutenant Colonel Jonathan F. Potter*.

For Appellee: *Captain John Gardella* (argued); *Colonel Mark H. Sydenham* and *Major Cormac M. Smith* (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge ERDMANN and Judges RYAN and SPARKS joined. Judge STUCKY filed a separate opinion concurring in part and dissenting in part.

————————

Judge OHLSON delivered the opinion of the Court.

Contrary to Appellant's pleas, a military panel with enlisted representation, sitting as a general court-martial, convicted Appellant of one specification each of violation of a lawful regulation, cruelty and maltreatment, aggravated sexual contact, abusive sexual contact, indecent viewing, larceny, and assault consummated by a battery, in violation of Articles 92, 93, 120, 120c, 121, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 893, 920, 920c, 921, 928 (2012). The panel sentenced Appellant to a reduction in grade to E-1, forfeiture of all pay and allowances, confinement for 120 days, and a bad-conduct discharge. The convening authority approved the adjudged findings and sentence.

The United States Army Court of Criminal Appeals (CCA) dismissed the finding of guilty for the Article 120, UCMJ, offense on the basis of unreasonable multiplication of charges with the Article 120c, UCMJ, offense. Additionally, the CCA found there was dilatory post-trial processing by the Government which merited providing sentencing relief to Appellant. However, the CCA summarily concluded that the issues raised below by Appellant pursuant to *United States v. Grostefon*[1] were without merit and thus did not address the issue granted review by this Court. In reassessing Appellant's sentence, the CCA affirmed only so much of the sentence as provided for a reduction in grade to E-1, forfeiture of all pay and allowances, confinement for ninety days, and a bad-conduct discharge.

We granted review of the following issue:

> Whether the military judge committed plain error when he failed to instruct the panel on the mens rea required for an Article 92, UCMJ, violation of Army Regulation 600-20, which prohibits requiring the consumption of excessive amounts of alcohol as an initiation rite of passage.

*United States v. Haverty*, 75 M.J. 370, 370–71 (C.A.A.F. 2016).

We conclude that pursuant to the Supreme Court precedent of *Elonis v. United States*, 135 S. Ct. 2001 (2015), the minimum mens rea that is required for this Article 92, UCMJ, offense is recklessness. Further, we hold that the military judge committed plain error in this case by not instructing the panel with the proper mens rea standard. We therefore reverse the decision of the CCA on the Article 92, UCMJ, offense and remand the case for further proceedings consistent with this opinion.

## I. Background

Appellant, a sergeant in the United States Army, was accused of multiple offenses related to an encounter in late September 2012 with Specialist (SPC) BB, who had recently arrived at Fort Bragg. Over a period of two days, Appellant,

---

[1] 12 M.J. 431 (C.M.A. 1982).

who was SPC BB's squad leader,[2] helped her run errands to put together her barracks room and assemble her field gear. On the second day, Appellant arrived at SPC BB's barracks to help her prepare her gear, and without invitation grabbed a beer out of the refrigerator, lay back on the pillows on her bed, and kicked off his shoes. Appellant then drank more alcohol belonging to SPC BB's roommate.

Despite SPC BB telling him that she did not drink alcohol, Appellant twice insisted that she drink a shot, saying that if she did not do so he would not help her assemble her gear or take her to the store. Appellant told SPC BB that this demand did not constitute "hazing" but instead was an "initiation." SPC BB testified that she initially declined to drink the alcohol, but that ultimately she felt pressured into doing so because Appellant said it was a required part of her initiation, she needed help with her gear, and Appellant used a serious tone of voice when making the demand.

Upon returning to the barracks room after a trip to the store, Appellant used "[t]he same raised commanding voice" and told SPC BB to take another shot. SPC BB responded that she did not want to, but Appellant ignored her objections and said this could be SPC BB's last shot if she took it. SPC BB then drank a capful of alcohol that Appellant poured for her. After that, Appellant asked SPC BB if she knew how to conduct a "patient assessment" and then insisted on performing one on her, which involved placing his hands on various parts of her body to include her vaginal area, despite her objections.[3]

Based on his conduct, Appellant was charged with, among other things, hazing under Article 92, UCMJ. Article 92, UCMJ, prohibits servicemembers from violating or failing to obey "any lawful general order or regulation." Appellant was convicted of violating the Army regulation prohibiting hazing, which states in pertinent part:

---

[2] Both Appellant and SPC BB were Army medics.

[3] The remaining underlying facts related to the charges and convictions in this case are not relevant to the issue before this Court.

The Army has been and continues to be a val-ues-based organization where everyone is encouraged to do what is right by treating others as they should be treated—with dignity and respect. Hazing is fundamentally in opposition to our values and is prohibited.

*a. Definition*. Hazing is defined as any conduct whereby one military member or employee, regardless of Service or rank, unnecessarily causes another military member or employee, regardless of Service or rank, to suffer or be exposed to an activity that is cruel, abusive, oppressive, or harmful.

(1) Hazing includes, but is not limited, to any form of initiation "rite of passage" or congratulatory act that involves: physically striking another in order to inflict pain; piercing another's skin in any manner; forcing or requiring the consumption of excessive amounts of food, alcohol, drugs, or other substances; or encouraging another to engage in illegal, harmful, demeaning or dangerous acts. Soliciting or coercing another to participate in any such activity is also considered hazing. Hazing need not involve physical contact among or between military members or employees; it can be verbal or psychological in nature.

....

*b. Scope*. Hazing is not limited to superior-subordinate relationships. It may occur between peers or even, under certain circumstances, may involve actions directed towards senior military personnel by those junior in rank or grade to them (for example, a training instructor hazing a student who is superior in rank). Hazing has at times occurred during graduation ceremonies or similar military "rites of passage." However, it may also happen in day-to-day military settings. It is prohibited in all cases, to include off-duty or "unofficial" celebrations or unit functions. Express or implied consent to hazing is not a defense to violation of this regulation.

4

Dep't of the Army, Reg. 600-20, Personnel-General, Army Command Policy para. 4-20.*a.* (Mar. 18, 2008) [hereinafter AR 600-20].[4]

At the court-martial, the military judge drafted the panel instructions "with the parties' input" and provided them to both parties for review prior to reading them to the panel. Neither party objected to the instructions or requested any additional instructions. The military judge instructed the panel members on the Article 92, UCMJ, offense as follows:

> I will advise you of the elements of each offense charged. In The [sic] Specification of Charge I, the accused is charged with the offense of violating a lawful general regulation, in violation of Article 92, [UCMJ]. In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond reasonable doubt:

> First, that there was in existence a certain lawful general regulation in the following terms: Army Regulation 600-20, paragraph 4-20(a), dated 18 March 2008, which prohibits requiring the consumption of excessive amounts of alcohol as an initiation rite of passage;

> second, that the accused had a duty to obey such regulation; and

> third, that on or about 28 September 2012, at Fort Bragg, North Carolina, the accused violated this lawful general regulation by wrongfully requiring [SPC BB] to consume alcohol.

> As a matter of law, the regulation in this case as described in the specification, if in fact there was such a regulation, was a lawful regulation.

---

[4] The version of AR 600-20 pertinent to Appellant's charge was dated March 18, 2008, effective April 18, 2008, and reissued August 4, 2011, effective September 20, 2011, by order of the Secretary of the Army. A new version of AR 600-20 was issued and became effective on November 6, 2014. The hazing regulation at issue in this case was combined into a new regulation paragraph 4-19, "Treatment of persons," addressing both hazing and bullying. *See* AR 600-20, para. 4-19. at 30-31 (Nov. 6, 2014).

General regulations are those regulations which are generally applicable to an armed force and which are properly published by the Secretary of Defense or a military department. You may find the accused guilty of violating a general regulation only if you are satisfied beyond a reasonable doubt that the regulation was general.

## II. Applicable Law

The U.S. Supreme Court has observed that "[f]ew areas of criminal law pose more difficulty than the proper definition of the *mens rea* required for any particular crime." *United States v. Bailey*, 444 U.S. 394, 403 (1980). The remainder of this opinion serves as a testament to the accuracy of that pronouncement.

Any analysis of the issue before us must begin from the premise that "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *United States v. United States Gypsum Co.,* 438 U.S. 422, 436 (1978) (alteration in original) (citation omitted) (internal quotation marks omitted). The Supreme Court recently reiterated this legal tenet in *Elonis*: "Although there are exceptions, the 'general rule' is that a guilty mind is 'a necessary element in the indictment and proof of every crime.'" 135 S. Ct. at 2009 (quoting *United States v. Balint*, 258 U.S. 250, 251 (1922)).[5]

The next important principle is that silence in a criminal statute regarding a mens rea requirement does not necessarily prevent such a requirement from being inferred.[6] *See*

---

[5] The general rule that an accused must have a "guilty mind" does not mean that, as a general rule, an accused must know that his actions constitute criminal conduct. *United States v. Caldwell*, 75 M.J. 276, 280 n.4 (C.A.A.F. 2016).

[6] As indicated above, mens rea is not always required for criminal offenses. In *United States v. Gifford*, this Court discussed the strict liability exception to the mens rea general rule. 75 M.J. 140, 142–44 (C.A.A.F. 2016); *see also Staples v. United States*, 511 U.S. 600, 606 (1994); *Balint*, 258 U.S. at 252. Specifically, we noted that with strict liability offenses, the government is not required "to prove that an accused had knowledge of the facts that make his or her actions criminal in order to secure a conviction." *Gifford*, 75 M.J. at 142. But we also recognized in *Gifford* that "the Su-

*id.* Courts must seek to discern any legislative intent about a mens rea requirement in a statute that is otherwise silent. If a court determines that Congress intended, either expressly or impliedly, to purposefully omit a mens rea requirement, then the court must respect that legislative intent. *Gifford*, 75 M.J. at 143–44. Similarly, if a court determines that Congress intended, either expressly or impliedly, to have a particular mens rea requirement apply to a certain criminal statute, then the court must construe that statute accordingly. *See Elonis* at 2009–10; *Staples*, 511 U.S. at 606. If, however, a statute is silent regarding a mens rea requirement, and if a court cannot discern the legislative intent in regard to that statute, then the court will infer a mens rea requirement consistent with the "general rule" cited by the Supreme Court in *Elonis*, 135 S. Ct. at 2009 (quoting *Balint*, 258 U.S. at 251).

In *Gifford*, this Court concluded that when construing an order—a violation of which underlies an Article 92, UCMJ, offense—commanders should be held to the same standard as legislatures when determining whether they intended to create an offense that does not require the government to prove an accused's mens rea; that is, they must speak with "a clear voice" on the matter. 75 M.J. at 144. When a commander fails to do so, we interpret the criminal offense as including "'broadly applicable scienter[7] requirements.'" *Elonis*, 135 S. Ct. at 2009 (footnote added) (citation omitted). Accordingly, in such cases we must decide whether the proper level of mens rea that we should infer is "general intent," "negligently," "recklessly," "knowingly," or "intentionally." *Id.* Consistent with the Supreme Court's ruling in *Elonis*, in making that determination we read into the statute or regulation "only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Elonis*, 135 S. Ct. at 2010 (citation omitted) (internal quotation marks omitted).

---

preme Court has cast a jaundiced eye" on strict liability offenses by characterizing them as "generally disfavored." *Id.* (quoting *United States Gypsum Co.*, 438 U.S. at 438).

[7] The terms "scienter" and "mens rea" are often used interchangeably.

We begin this process of determining the appropriate mens rea by noting that the Supreme Court has "'long been reluctant to infer that a negligence standard[8] was intended in criminal statutes.'" *Id.* at 2011 (footnote added) (quoting *Rogers v. United States*, 422 U.S. 35, 47 (1975) (Marshall, J., concurring)). Accordingly, upon ruling out "negligently" as the appropriate mens rea, we must next turn our attention to the question of whether "general intent" suffices.

"General intent" merely requires that an accused commit an act with knowledge of certain facts. *Caldwell*, 75 M.J. at 281. As defined in *Black's Law Dictionary*, *supra* note 8, at 931, general intent involves "[t]he intent to perform an act even though the actor does not desire the consequences that result." In *Carter v. United States*, the Supreme Court held that the general intent requirement contained in a statute that criminalized the taking "by force and violence" items of value belonging to or in the care of a bank was sufficient. 530 U.S. 261, 269–70 (2000). Similarly, in *Caldwell,* this Court held that a general intent mens rea was sufficient to prove maltreatment under Article 93, UCMJ. 75 M.J. at 282.

We next turn our attention to "recklessly." *Black's Law Dictionary, supra* note 8, at 1462, defines "recklessly" as follows: "In such a manner that the actor knew that there was a substantial and unjustifiable risk that the social harm the law was designed to prevent would occur and ignored this risk when engaging in the prohibited conduct." Only if "general intent" or "recklessly" are not sufficient to separate wrongful conduct from otherwise innocent conduct do we need to turn our attention to "knowingly" or "intentionally," and as explained below, the need to do so does not arise in the instant case. *Elonis*, 135 S. Ct. at 2010.

---

[8] *Black's Law Dictionary* defines the mens rea of criminal negligence as "[t]he objectively assessed mental state of an actor who should know that there is a substantial and unjustifiable risk that the social harm that the law is designed to prevent will occur but who nevertheless engages in the prohibited action." *Black's Law Dictionary* 1197 (10th ed. 2014).

## III. Analysis

### A. Hazing offense mens rea

Applying the general legal principles discussed above, we now must determine what mens rea requirement applies to the specific hazing regulation at issue here. In doing so, we note several points.

First, although the regulation contains no explicit mens rea, there is no indication that the Secretary of the Army intended hazing to be a strict liability offense. *See* AR 600-20 para. 4-20.

Second, this Court cannot discern whether the Secretary of the Army intended to have some particular mens rea requirement apply to this regulation.

And third, in light of these first two points, we are obligated to interpret the criminal offense of hazing as including "broadly applicable [mens rea] requirements."[9] *Elonis*, 135 S. Ct. at 2009 (internal quotation marks omitted) (citation omitted). In deciding what level of mens rea we should infer in this instance, we remain mindful of the admonition that we should infer "only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct." *Id.* at 2010 (internal quotation marks omitted) (citation omitted).

In making this determination, we conclude that "general intent" is not a sufficient level of mens rea to separate wrongful conduct from otherwise innocent conduct,[10] and

---

[9] Just as we indicated in *Gifford*, our ruling today—and our reiteration of the principle that "wrongdoing must be conscious to be criminal," 75 M.J. at 144 (internal quotation marks omitted) (citation omitted)—does not disturb statutory law and our precedent regarding offenses for which lack of knowledge cannot be a defense (e.g., the age of a victim in a sexual offense involving children). *Id.* at 144 n.6.

[10] We acknowledge that the instant case is somewhat similar to *Caldwell* where we held that general intent is sufficient to prove the offense of maltreatment. 75 M.J. at 282. However, the two cases are distinguishable on several grounds. First, this case involves conduct in violation of a lawful regulation that was promulgated by the Secretary of the Army and has been criminalized through Article 92, UCMJ. *Caldwell*, however, involved a mil-

that our recent opinion in *Gifford* provides the proper template for determining the mens rea requirement in the instant case. In *Gifford*, the accused was charged with violating a general order that prohibited servicemembers twenty-one years of age and older from providing alcohol to individuals under twenty-one years of age for the purpose of consumption. 75 M.J. at 141. We concluded that: (a) "negligence" was not a sufficient level of mens rea to separate wrongful conduct from otherwise innocent conduct; (b) a "recklessness" mens rea *would* adequately separate wrongful conduct from otherwise innocent conduct; and (c) intuiting a mens rea greater than "recklessness" would cause us to improperly "'step[] over the line that separates interpretation from amendment.'" *Id.* at 147 (citation omitted). We therefore held in *Gifford* that in order to obtain a conviction under such circumstances, the government was required to prove that "Appellant acted with reckless disregard as to whether the individuals to whom he was providing alcohol

---

itary offense that was specially created by Congress and prohibited under its own separate article—Article 93, UCMJ—reflecting Congress's particular concern about "the deeply corrosive effect that maltreatment can have on the military's paramount mission to defend our Nation." 75 M.J. at 281, 285. Second, *Caldwell*'s holding that general intent was sufficient to find a violation of Article 93, UCMJ, was predicated on the known existence of a superior-subordinate relationship between the accused and the victim. For the offense of hazing under Article 92, UCMJ, the existence of a superior-subordinate relationship is explicitly *not* required. AR 600-20 para. 4-20.*b.* states: "Hazing is not limited to superior-subordinate relationships. It may occur between peers or even, under certain circumstances, may involve actions directed towards senior military personnel by those junior in rank or grade ...." And third, in *Caldwell,* we held that when an accused knew that the alleged victim was subject to his or her orders, and knew that he or she made statements or engaged in certain conduct regarding that subordinate, then under Article 93, UCMJ, it was sufficient for those statements or actions to be viewed *objectively* as being abusive because such abusive conduct that is "consciously directed at a subordinate is in no sense lawful." 75 M.J. at 282. That is not true under AR 600-20. The regulation defines hazing so broadly that actions that are illegal under certain circumstances may be permissible under other circumstances. Thus the two cases are not analogous and our holding in *Caldwell* is not controlling in the instant case.

were under twenty-one years of age." *Id.* at 148. The same analytical approach applies here.

However, before we analyze the sufficiency of a "general intent" mens rea requirement and then apply the *Gifford* template to the instant case, we first must address some imprecision in the language of AR 600-20.

As noted above, AR 600-20, para. 4-20.*a.*, defines hazing as follows:

> *a. Definition.* Hazing is defined as any conduct whereby one military member or employee, regardless of Service or rank, unnecessarily causes another military member or employee, regardless of Service or rank, to suffer or be exposed to an activity that is cruel, abusive, oppressive, or harmful.
>
> (1) Hazing includes, but is not limited, to any form of initiation "rite of passage" or congratulatory act that involves: physically striking another in order to inflict pain; piercing another's skin in any manner; forcing or requiring the consumption of excessive amounts of food, alcohol, drugs, or other substances; or encouraging another to engage in illegal, harmful, demeaning or dangerous acts. Soliciting or coercing another to participate in any such activity is also considered hazing. Hazing need not involve physical contact among or between military members or employees; it can be verbal or psychological in nature.

Para. 4-20.*b.*, which addresses the scope of hazing, states the following:

> *b. Scope.* Hazing is not limited to superior-subordinate relationships. It may occur between peers or even, under certain circumstances, may involve actions directed towards senior military personnel by those junior in rank or grade to them (for example, a training instructor hazing a student who is superior in rank). Hazing has at times occurred during graduation ceremonies or similar military "rites of passage." However, it may also happen in day-to-day military settings. It is prohibited in all cases, to include off-duty or "unofficial" celebrations or unit functions. Express or implied

11

consent to hazing is not a defense to violation of
this regulation.

This language is overly expansive. As can be seen above,
the regulation uses phrases such as "hazing is defined as
*any* conduct whereby one military member or employee …
unnecessarily causes [another person] ... [to] be *exposed to*
an activity that is ... *harmful*," and "[h]azing includes, *but is
not limited, to* [sic] any form of initiation 'rite of passage' or
congratulatory act." (Emphasis added.) These provisions
could be viewed as sweeping within the ambit of the regula-
tion conduct that has no nexus to activity that is generally
understood to constitute hazing. To address that concern, we
conclude that for UCMJ purposes, the passage "but is not
limited, to" which appears in para. 4-20.*a.*(1) refers solely to
the examples given of various types of hazing behavior. And
as a corollary, we conclude that in order for conduct to be
prosecuted as hazing under AR 600-20, that conduct must
consist of "any form of initiation 'rite of passage' or congratu-
latory act."[11] We take this step in accordance with our deci-

[11] We observe that the relevant paragraph of the revised No-
vember 6, 2014, version of AR 600-20 para. 4-19, addresses the
scope of hazing as follows:

> *b. Scope.*
>
> (1) What constitutes hazing and bullying? Haz-
> ing and bullying can include both physical and
> nonphysical interactions. Hazing typically in-
> volves conduct directed at new members of an
> organization or individuals who have recently
> achieved a career milestone. *It may result from
> any form of initiation, "rite of passage," or con-
> gratulatory act that includes unauthorized con-
> duct such as*: physically striking another while
> intending to cause, or causing, the infliction of
> pain or other physical marks such as bruises,
> swelling, broken bones, internal injuries; pierc-
> ing another's skin in any manner; forcing or re-
> quiring the consumption of excessive amounts
> of food, alcohol, drugs, or other substances; or
> encouraging another to engage in illegal, harm-
> ful, demeaning, or unauthorized dangerous
> acts….

(Emphasis added.) Though the revised regulation did not inform
our interpretation of the regulation at issue in this case, we note

sion in *United States v. Neal*, 68 M.J. 289, 301–02 (C.A.A.F. 2010), where this Court recognized that there was both a broad and a narrow interpretation of a statute, and "decline[d] to adopt a broad interpretation that would raise a direct conflict with … a Supreme Court decision applicable to criminal proceedings, when a narrow interpretation can avoid such a conflict." *Cf. Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502–07 (1985) (excising words to give a statute constitutional effect).

Having addressed this preliminary point, we next turn our attention to our mens rea analysis. We first conclude that, in regard to the particular regulation at issue here, "general intent" is not a sufficient level of mens rea to separate wrongful conduct from otherwise innocent conduct. *See Caldwell*, 75 M.J. at 281–82; *see also Elonis*, 135 S. Ct. at 2010. The elements of "Hazing" under AR 600-20 are as follows: (1) conduct (2) that unnecessarily causes another (3) to suffer or be exposed to an activity that is cruel, abusive, oppressive, or harmful. As noted earlier, general intent merely requires "[t]he intent to perform [the actus reus] *even though the actor does not desire the consequences that result*." *Black's Law Dictionary, supra* note 8, at 931 (emphasis added). Thus, applying the mens rea of general intent to these elements could cause a servicemember to be convicted of hazing if he encourages a new member of his unit to engage in conduct which the servicemember honestly believes is not harmful, but which, objectively, could be considered harmful. But more importantly for our purposes, under certain scenarios the application of the general intent mens rea would not separate criminal conduct from otherwise innocent conduct.

The basis for this conclusion is demonstrated by the following example: Let us suppose that a servicemember goads a longtime friend who is newly assigned to his military unit into playing a drinking game whereby, in the course of participating, the friend is "required" to consume "excessive

that our interpretation conforms with the plain language of the revised regulation. The unclear language "but is not limited, to" is no longer of concern in the current AR 600-20.

amounts ... of alcohol," and thus is exposed to an activity that is harmful. Let us further suppose that the servicemember has exposed his friend to this drinking game merely because he thinks the friend will have a good time, and the servicemember honestly believes that the drinking game is not "harmful." Such conduct could be perfectly innocent in a legal context—albeit extremely misguided and unwise.

And yet, the application of a general intent mens rea requirement to the provisions of AR 600-20 could cause these same actions, under these same circumstances, to be treated as *unlawful* conduct under Article 92, UCMJ. That is because under the hypothetical scenario presented above, the servicemember had the intent to perform the actus reus of encouraging his friend to play a drinking game which unnecessarily caused his friend to be exposed to a harmful activity. If an objective observer would conclude that the servicemember's conduct constituted an "initiation 'rite of passage' or congratulatory act"—as evidenced by the timing of the incident relative to the friend's arrival at the unit—then the servicemember could be convicted of hazing. Hence, we conclude that general intent is not sufficient to separate innocent conduct from wrongful conduct under AR 600-20.

On the other hand, applying the *Gifford* mens rea template, we conclude that "recklessly" *is* a sufficient mens rea in this instance. Pursuant to this mens rea requirement, in order for an accused to be convicted under Article 92, UCMJ, for a violation of AR 600-20 para. 4-20, the accused must have consciously disregarded a known risk that his or her conduct would unnecessarily cause another military member or employee to suffer or be exposed to an activity that is cruel, abusive, oppressive, or harmful. We deem this standard to be sufficient to separate wrongful conduct from innocent conduct in prosecutions under AR 600-20 para. 4-20.

First, recklessness is deemed to be consistent with moral culpability. *See Gifford*, 75 M.J. at 147–148. Second, a servicemember who honestly believes that an activity is not cruel, abusive, oppressive, or harmful could not be held criminally liable. And third, the requirement that the servicemember must *consciously disregard* a *known risk* that the hazing conduct was cruel, abusive, oppressive, or

harmful serves as a sufficient barrier separating innocent conduct from wrongful conduct under the pertinent provisions of AR 600-20.

And finally, just as in *Gifford*, we conclude that intuiting a mens rea greater than "recklessness" in the instant case would cause us to improperly "step[] over the line that separates interpretation from amendment." 75 M.J. at 147 (internal quotation marks omitted) (citation omitted).

We therefore conclude that in the instant case the proper legal standard upon which the military judge was obligated to instruct the panel was whether Appellant acted "recklessly." And, although it is not directly relevant to our determination in this case, we note with particular interest that in a 2014 update to the regulation, the Secretary of the Army modified the provisions of AR 600-20 to specifically state that a mens rea of "recklessness" is required in order for a servicemember to be convicted of hazing. *See supra* note 4.

## B. Hazing instructions

Because Appellant did not object to the military judge's failure to instruct the members on a mens rea requirement for the offense of hazing under Article 92, UCMJ, we review this issue for plain error. *See United States v. Payne*, 73 M.J. 19, 22–23 (C.A.A.F. 2014). Panel instructions are analyzed for plain error based on the law *at the time of appeal*. *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008) (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)). And here, although *Elonis* and *Gifford* were decided *after* Appellant's trial, they were decided *before* Appellant's appeal. Therefore, because *Gifford* was controlling precedent at the time of this appeal, and because the military judge did not instruct the panel using the required mens rea of "recklessly," we hold first that there is error, and second, that the error is clear or obvious.

Turning to the third prong of the plain error analysis, we note that Appellant has the burden of showing that the error had an unfair prejudicial impact on the members' deliberations. *United States v. Knapp*, 73 M.J. 33, 37 (C.A.A.F. 2014). Although it is a close question, we conclude that Appellant has met this burden. Not only did the military judge not instruct the panel that it must find Appellant acted with

a mens rea of "recklessly," the military judge did not instruct the panel that it needed to find any mens rea at all. This Court "presume[s] that the panel followed the instructions given by the military judge." *United States v. Custis*, 65 M.J. 366, 372 (C.A.A.F. 2007). Accordingly, based on the military judge's instructions, we presume that the panel applied a general intent analysis[12] whereby Appellant's knowledge of his commission of the actus reus alone was sufficient to determine guilt. Because Appellant contested the issue of intent in this case,[13] we conclude that the military judge's error had an unfair prejudicial impact on the members' deliberations. We therefore ultimately conclude that Appellant has demonstrated material prejudice to a substantial right.

## IV. Decision

We conclude that the military judge plainly erred in failing to instruct the members on the mens rea element for the offense of hazing under Article 92, UCMJ. Accordingly, the decision of the United States Army Court of Criminal Appeals is reversed as to the Specification of Charge I and the sentence. The remaining findings of guilty are affirmed. The record of trial is returned to the Judge Advocate General of the Army and a rehearing on the affected finding and sentence is authorized.

---

[12] This point was conceded by the Government, which argued the military judge explicitly instructed an application of general intent.

[13] Appellant repeatedly stated that he was only offering the shots of alcohol to the victim and was not ordering her to drink them. He also testified that he did not intend to get SPC BB drunk and assumed she wanted to relax too. Further, defense counsel argued that the quantity of alcohol consumed by SPC BB was not excessive and not ordered by Appellant.

Judge STUCKY, concurring in part and dissenting in part.

I agree with the majority that recklessness is the appropriate mens rea for the offense of violating the lawful general order prohibiting hazing and that the military judge's failure to so instruct amounted to clear and obvious error. I disagree, however, with the majority's conclusion that Appellant established that the error materially prejudiced his substantial rights.

In *United States v. Lopez*, we adopted the Supreme Court's interpretation of the prejudice prong of the plain error test: "the appellant 'must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" __ M.J. __ , __ (4) (C.A.A.F. 2017) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)). To my mind, Appellant failed to meet his burden to establish the prejudice prong of the plain error test, and "failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006), *quoted in Lopez*, __ M.J. at __ (4).

The facts, as thoroughly recounted by the majority, do not establish a reasonable probability that the result would have been different had the members been instructed on the appropriate mens rea. In fact, the opposite is the case. The evidence shows that Appellant's conduct was not only reckless, but also purposeful. As part of what Appellant himself labeled an "initiation," he purposefully required SPC BB to consume alcoholic beverages. And he purposefully required her to submit to a trauma assessment, during which he intentionally touched her vaginal area, despite her objections. Therefore, I would affirm his hazing conviction.