# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, SALUSSOLIA, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class CEDRIC L. MCDONALD**
**United States Army, Appellant**

ARMY 20160339

Headquarters, Joint Readiness Training Center and Fort Polk
Douglas K. Watkins, Military Judge
Lieutenant Colonel Christopher L. Burgess

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Captain Joshua B. Fix, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Major Todd W. Simpson, JA; Captain Steven Dray, JA; Captain Joshua B. Fix, JA (on reply brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Austin L. Fenwick, JA; Captain Sandra L. Ahinga, JA (on brief).

16 May 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SALUSSOLIA, Judge:

In this appeal we consider, but reject, appellant's claim that the military judge instructed on an impermissibly low *mens rea* standard resulting in appellant being found guilty of sexual assault by bodily harm. Rather, we affirm appellant's conviction, finding appellant failed to establish the military judge's instructions to the panel constituted plain error.

A panel with enlisted members, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of conspiracy to commit sexual assault and one specification of sexual assault by bodily harm in violation of Articles 81 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 820 (2012) (UCMJ). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

We review this case under Article 66, UCMJ. Appellant assigned two errors, one of which merits discussion, but neither warrant relief. We have also considered the matters appellant personally asserted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and conclude appellant's *Grostefon* matters do not warrant relief.

## BACKGROUND

In the summer of 2015, appellant's roommate, Private (PV2) Thomas, met the victim, DJ, on a dating website. Prior to the sexual assault, PV2 Thomas and DJ had met in person on two brief occasions. Appellant was present during these instances, but neither knew DJ nor spoke to her.

In the early morning of 31 August at approximately 0100 hours, DJ visited PV2 Thomas at his barracks on Fort Polk, Louisiana. Prior to her arrival, DJ twice asked PV2 Thomas via text messages whether anyone else was in the room with him. Private Thomas replied no both times. Upon entering PV2 Thomas' room, DJ observed the lights were off, the room was dark, and no one else appeared to be present. Appellant did not make his presence known to her as he was apparently hiding in the room.

Unaware of appellant's presence, DJ laid on PV2 Thomas' bed, talked to PV2 Thomas, and listened to music. With the lights still off, DJ and PV2 Thomas engaged in sexual intercourse. At this point, PV2 Thomas asked DJ to bend over his bed so he could penetrate her vulva while standing behind her. DJ complied with his request and the two continued to engage in sexual intercourse until she asked him to move a chair that was in the way. Private Thomas disengaged from the sexual act and moved the chair as requested.

At this point, appellant and PV2 Thomas took the opportunity to switch places. Appellant then began penetrating DJ's vulva with his penis from behind while she continued to lay bent over on the bed with her face on the mattress. She testified appellant did not identify himself, speak to her in any manner or otherwise seek consent prior to penetrating her vulva with his penis. Upon feeling the penetration become rougher, DJ reached her hand back and felt a wrist watch on the arm of the individual.

DJ knew PV2 Thomas was not wearing a wrist watch and testified that upon touching the watch she "kind of freaked out and the person penetrating her got scared and backed up." She did not say anything or look back because PV2 Thomas told her to keep her head down on the bed. DJ also testified that she could tell the individual penetrating her was not PV2 Thomas because she felt a condom and PV2 Thomas was not wearing one. She also perceived this other individual as being taller and thinner than PV2 Thomas. As appellant removed his penis from DJ's

2

vulva, PV2 Thomas immediately took appellant's place and again engaged in sexual intercourse with her from behind.

DJ testified that while subsequently performing oral sodomy on PV2 Thomas, he "asked me if I would have sex with his friend that drive [sic] a truck," referring to appellant. When DJ stated that she would not, PV2 Thomas told DJ that she "probably already [had]." At this point, DJ left the room. Upon leaving, she saw a person lying on the other bed wrapped in a blanket. Because it was still dark and her view of the bed was partially blocked by a partition sheet hanging from the ceiling, DJ could not identify the individual wrapped in the blanket.

After she departed the barracks, she and PV2 Thomas communicated via text messaging about what had transpired in the room. Private Thomas denied appellant's presence in the room messaging that the individual "wasn't the dude in the truck" and "I can't tell you who it was." Later the same day, DJ reported that she was sexually assaulted.

During the trial, appellant challenged the government's theory that the sexual intercourse between appellant and DJ was nonconsensual. Appellant did this through extensive cross-examination of government witnesses, reliance on certain statements made by appellant to the U.S. Army Criminal Investigation Command (CID), and the presentation of one witness during the defense case-in-chief testifying to appellant's character for truthfulness.

Prior to panel deliberations, the military judge gave the parties copies of his instructions. He provided them time to review the instructions and allowed both sides the opportunity to make objections. Appellant did not object to the final version of the instructions read and provided to the members.

As to Specification 2 of Charge II, the offense of sexual assault by bodily harm,[1] the military judge's instructions mirrored the Military Judge's Benchbook

---

[1] The elements for a violation of Article 120, UCMJ, sexual assault by bodily harm are: 1) that the accused committed a sexual act upon another person by; 2) causing bodily harm to that other person. *Manual for Courts-Martial, United States* (2012 ed.) (*MCM*), pt. IV ¶45.a.(b)(1)(B). In pertinent part, a sexual act is: "contact between the penis and the vulva . . . and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight[.]" *Id.* at ¶ 45.a.(g)(1)(A). Bodily harm is "any offensive touching of another, however slight, including any nonconsensual sexual act or nonconsensual sexual contact." *Id.* at ¶

(continued . . .)

and the statutory language of Article 120, UCMJ. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-45-14 (10 Sept. 2014). The military judge also instructed the panel members on the defense of mistake of fact as to consent in relation to this offense. In addition to the offense of conspiracy to commit sexual assault, appellant was convicted of Specification 2 of Charge II.

Though appellant did not object to the instructions or request additional instructions concerning the offense of sexual assault by bodily harm or the mistake of fact defense, he now asserts the military judge's instructions on the elements for this offense are insufficient in light of *Elonis v. United States* 135 S. Ct. 2001 (2015), *United States v. Gifford*, 75 M.J. 140 (C.A.A.F. 2016), and *United States v. Haverty*, 76 M.J. 199 (C.A.A.F. 2017).[2] Specifically, appellant asserts *Elonis*, *Gifford*, and *Haverty* require a *mens rea* of at least recklessness for the element of "bodily harm." Because the military judge failed to instruct on the *mens rea* of recklessness, appellant was convicted under an erroneous theory of liability. Accordingly, appellant requests the court dismiss Specification 2 of Charge II and set aside the sentence.

**LAW AND ANALYSIS**

Rule for Courts-Martial (R.C.M.) 920(f) states "[f]ailure to object to an instruction . . . before the members close to deliberate constitutes waiver of the objection in the absence of plain error." In other words, failure to object forfeits the issue absent plain error. *United States v. Davis*, 76 M.J. 224, 225 (C.A.A.F. 2017). When an "accused fails to preserve the instructional error by an adequate objection or request, we test for plain error." *Id.* at 229 (citing *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011)); *see also Henderson v. United States*, 568 U.S. 266 (2013) (reaffirming the principle that any right may be forfeited by failing to timely assert it).

Under a plain error analysis, appellant has the burden of proving: "(1) an error was committed; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *United States v. Paige*, 67 M.J. 442, 449 (C.A.A.F. 2009) (quoting *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)). "Once [appellant] meets his burden of establishing plain error, the burden shifts to the Government to convince us that this constitutional error was harmless beyond a reasonable doubt." *Paige*, 67 M.J. at 449 (quoting *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005)). On the other hand, "[t]he failure to

---

(continued . . .)
45.a.(g)(3). In appellant's case, the sexual act—penetrating DJ's vulva with his penis—was also the very same bodily harm caused.

[2] Appellant's trial commenced after *Elonis* and *Gifford* were decided.

establish any one of the prongs is fatal to a plain error claim." *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017) (quoting *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006)).

Because appellant did not object nor request additional instructions regarding a *mens rea* of at least recklessness, we test for plain error. First, we find nothing in the record to suggest that the military judge applied an impermissibly low *mens rea* standard in adjudicating the charge against the appellant for committing a sexual assault by causing bodily harm. Even assuming arguendo that the military judge committed an obvious error by not instructing on a *mens rea* of recklessness, we find no material prejudice to appellant's substantial rights because we find Specification 2 was factually sufficient even applying a scienter of recklessness.[3]

Here, appellant's misconduct of having sexual intercourse with DJ without her consent was at the very least reckless, but more likely purposeful. *See United States v. Flournoy*, ARMY 20160451, 2018 CCA LEXIS 58 at *6 (Army Ct. Crim. App. 8 Feb. 2018) (sum. disp.) *pet. den.*, 77 M.J. __, 2018 CAAF LEXIS 236 (C.A.A.F. 7 May 2018). Prior to being sexually assaulted by appellant, DJ was not aware appellant was present in the room. The factors contributing to her unawareness include: 1) PV2 Thomas' two time denial that anyone else was in the room; 2) limited visibility in the room due to the lights being turned off; and 3) a sheet partially blocking a view of appellant's bed. Appellant also did not say or do anything to indicate his presence.

Only upon reaching back and touching appellant's watch, did DJ become aware that someone other than PV2 Thomas was engaging in sexual intercourse with her. Even then appellant said nothing while PV2 Thomas instructed her to keep her head down on the bed to prevent her from identifying appellant. While we recognize appellant's statement to CID and PV2 Thomas' in-court testimony assert that DJ consented, we are not convinced of the veracity of these claims in light of their self-serving nature and multiple inconsistencies.

Based on the evidence contained in the record, it is clear appellant exploited the cover of darkness to conceal his identity from DJ as he switched places with PV2 Thomas and engaged in nonconsensual sexual intercourse with DJ. We thus conclude appellant's misconduct was done knowingly if not, at the very least, reckless and that any lack of instruction on the scienter of recklessness was not plain error.

---

[3] Recklessness requires an accused "knew that there was a substantial and unjustifiable risk that the social harm the law was designed to prevent would occur and ignored this risk when engaging in the prohibited conduct." *See United States v. Haverty*, 76 M.J. at 204-05 (citing *Black's Law Dictionary* 1462 (10th ed. 2014)).

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

Senior Judge CAMPANELLA and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

6