*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————————

### UNITED STATES
Appellee

**v.**

### Cedric L. McDONALD, Private First Class
United States Army, Appellant

**No. 18-0308**

Crim. App. No. 20160339

Argued February 19, 2019—Decided April 17, 2019

Military Judge: Douglas K. Watkins

For Appellant: *Captain Steven J. Dray* (argued); *Colonel Elizabeth G. Marotta, Lieutenant Colonel Christopher D. Carrier, Lieutenant Colonel Tiffany D. Pond, and Major Julie L. Borchers* (on brief).

For Appellee: *Captain Sandra L. Ahinga* (argued); *Colonel Steven P. Haight and Major Wayne H. Williams* (on brief).

Chief Judge STUCKY delivered the opinion of the Court, in which Judges RYAN, OHLSON, SPARKS, and MAGGS, joined.

————————————

Chief Judge STUCKY delivered the opinion of the Court.

Appellant was convicted of sexual assault by bodily harm on a nonconsent theory. The military judge in his case gave no specific mens rea instruction beyond the standard mistake of fact defense, which provides a defense if the accused had an honest and reasonable (nonnegligent) belief that consent was obtained. Appellant, however, contends that *Elonis v. United States*, 135 S. Ct. 2001 (2015), required the military judge to instruct the members that a mens rea of at least recklessness with regard to consent was necessary for conviction. We granted review to determine the required mens rea for sexual assault by bodily harm, and conclude that Congress clearly implied a general intent mens rea for that offense.

## I. Procedural History

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of conspiracy to commit sexual assault and one specification of sexual assault by bodily harm in violation of Articles 81 and 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 920 (2012). He was sentenced to a dishonorable discharge, reduction to the lowest enlisted grade, forfeiture of all pay and allowances, and three years of confinement. The convening authority approved the findings and sentence, and the United States Army Court of Criminal Appeals (CCA)  affirmed. *United States v. McDonald*, No. ARMY 20160339, 2018 CCA LEXIS 239, at *9, 2018 WL 2273588, at *4 (A. Ct. Crim. App. May 16, 2018).

## II. Background

Private Quantavious Thomas, Appellant's barracks roommate, met DJ, a civilian woman, on a dating website in the summer of 2015. Private Thomas and DJ had met socially on two occasions prior to the night in question. Appellant was present for both these occasions, but had never spoken with DJ.

On August 31, DJ went to Appellant and Private Thomas's shared barracks room at the latter's request. Prior to arriving, DJ asked twice via text message if anyone else would be in the room, and he replied no both times. DJ also insisted via text that she was not coming over for sex. It was dark when she first entered the shared barracks room, and she testified that there was no sign of anyone else in the room. However, Appellant was present, in his half of the shared room.

The parties all agree that eventually DJ and Private Thomas began to have sex, that at some point DJ bent over the bed so that Private Thomas could penetrate her vulva with his penis from behind, and that at some point Appellant took Private Thomas's place and penetrated DJ from behind.

DJ stated that she was unaware of Appellant's presence in the room until she reached back during intercourse and felt Appellant's wristwatch, an accessory she knew Private

Thomas was not wearing. She testified that no one had asked her for her consent to sexual intercourse with Appellant. Private Thomas testified that DJ could clearly see Appellant when she walked into the room, and that he (Private Thomas) asked her—with Appellant standing next to both of them—if both he and Appellant could have sex with her. Appellant's statement to CID, admitted into evidence, included a claim that he asked DJ if he could have sex with her, "and she said yeah." It also stated that he did not feel like he had done anything wrong because "there was consent." Defense counsel argued in closing that "[Appellant] knew he was 100 percent, convinced she was consenting. There is no lack of consent on his part, as he told CID."

Appellant did not object to the instructions given by the military judge, which were provided in advance with time to review and make objections. Nor did he object when the instructions were read to the members. The military judge instructed the members that they must find three elements beyond a reasonable doubt: (1) that Appellant committed a sexual act upon DJ by penetrating her vulva with his penis, (2) that he did so by causing bodily harm, namely penetrating DJ's vulva with his penis, and (3) that he did so without DJ's consent.

His instructions regarding consent and mistake of fact as to consent mirrored the language of the Military Judges' Benchbook, the Rules for Courts-Martial (R.C.M.), and Article 120, UCMJ.[1] Specifically, the military judge instructed that consent "means a freely given agreement to the conduct at issue by a competent person," that "[l]ack of verbal or physical resistance … does not constitute consent," and that any mistake of fact must be "reasonable under all the circumstances" and not "based on the negligent failure to discover the true facts."

### III. Law and Discussion

The mens rea applicable to an offense is an issue of statutory construction, reviewed de novo. *See United States v.*

---

[1] Dep't of Army, Pam. 27–9, Legal Services, Military Judges' Benchbook para. 3–45–14 (2014); R.C.M. 916(j)(1); Article 120(g)(8), (f), UCMJ, 10 U.S.C. § 920(g)(8), (f) (2012).

*Gifford*, 75 M.J. 140, 142 (C.A.A.F. 2016). When panel instructions are not objected to at trial, they are reviewed by this Court for plain error. *United States v. Haverty*, 76 M.J. 199, 208 (C.A.A.F. 2017). Relief will only be granted where (1) there was error that was (2) clear or obvious, and that (3) materially prejudiced a substantial right of the accused. *United States v. Armstrong*, 77 M.J. 465, 469 (C.A.A.F. 2018). In determining the mens rea applicable to an offense, we must first discern whether one is stated in the text, or, failing that, whether Congress impliedly intended a particular mens rea. *Gifford*, 75 M.J. at 143–44.

We conclude that Congress clearly intended a general intent mens rea for Article 120(b)(1)(B), 10 U.S.C. § 920(b)(1)(B) (2012), sexual assault by bodily harm. The military judge's instructions were therefore not erroneous. Accordingly, we need not reach the second or third prongs of the plain error analysis. We reach this conclusion for four reasons: (1) the plain text of the statute clearly implies a general intent offense, (2) the offense evolved from a general intent offense, (3) the presence of a negligence mens rea elsewhere in the statute suggests that Congress affirmatively chose to leave sexual assault by bodily harm as a general intent offense, and (4) construing the statute as a general intent offense does not criminalize innocent conduct.

## A. Plain Language

"As in all statutory construction cases, we begin with the language of the statute." *Barnhart v Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). Appellant was charged with "sexual assault by causing bodily harm" in violation of Article 120(b)(1)(B), UCMJ, 10 U.S.C. § 920(b)(1)(B) (2012). At the time, Article 120(b)(1)(B) provided that any person subject to the UCMJ who "commits a sexual act upon another person by … causing bodily harm to that other person … is guilty of sexual assault and shall be punished as a court-martial may direct." Article 120(g)(1)(A) defined "sexual act" to include "contact between the penis and the vulva or anus or mouth, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight." Article 120(g)(3) defined "bodily harm" as "any offensive touching of another, however slight, including any nonconsensual sexual act." Article 120(g)(8)(A) further defined "consent" as "a

freely given agreement to the conduct at issue by a competent person." Article 120(f), meanwhile, permitted an accused to raise any applicable defenses available under the R.C.M., and here Appellant raised the affirmative defense of mistake of fact. R.C.M. 916(j)(1). For the defense of mistake of fact to exist, "the ignorance or mistake of fact must have existed in the mind of the accused and must have been reasonable under all the circumstances." *Id.* Once raised, the Government bore the burden to prove beyond a reasonable doubt that the defense did not exist. R.C.M. 916(b)(1).

The statutory elements are thus ultimately straightforward: it is an offense to commit a sexual act without consent, although an honest and reasonable (nonnegligent) mistake of fact as to consent serves as an affirmative defense. Such a construction typically suggests a general intent offense. *Cf. United States v. Langley*, 33 M.J. 278, 281 (C.M.A. 1991) ("No specific intent is mentioned in the [Article 120 rape] statute—only general criminal *mens rea* is involved."); *United States v. Binegar*, 55 M.J. 1, 11 (C.A.A.F. 2001) (Crawford, C.J., dissenting on other grounds) (Discussing the elements of rape: "Here, the statutory language of the crime does not assign a specific intent *mens rea* to any of the elements. Therefore, only an honest and reasonable mistake will suffice because the entire crime is one of general intent.").

We have recognized that, per *Elonis*, the existence of a mens rea is presumed in the absence of clear congressional intent to the contrary. *Haverty,* 76 M.J. at 203–04. However, we also recognize that a general intent mens rea is not the absence of a mens rea, and such offenses remain viable in appropriate circumstances post-*Elonis*. *Elonis*, 135 S. Ct. at 2010 ("In some cases, a general requirement that a defendant act knowingly is itself an adequate safeguard."). Thus, we conclude that the plain text clearly implies a general intent offense.[2]

---

[2] We note that Congress did articulate a specific mens rea for other types of sexual assault by bodily harm. For certain types of sexual acts, the government must show that the accused acted with the "intent to abuse, humiliate, harass, or degrade any person," or "to arouse or gratify the sexual desire of any person." Arti-

## B. Legal Context

Further, the appropriate mens rea can be implied from context. *Haverty*, 76 M.J. at 204. "We assume that Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corps*, 498 U.S. 19, 32 (1990). Thus we must "take into account [the] contemporary legal context" at the time the statute was passed. *Cannon v. University of Chicago*, 441 U.S. 677, 699 (1979).

Article 120 rape stated a general intent offense when Congress established sexual assault by bodily harm. *See Langley*, 33 M.J. at 281–82. This was consistent with the common law crime of rape, which was also a general intent crime. 2 Wayne R. LaFave, *Substantive Criminal Law* § 17.2(b) (3d ed. 2018) ("[T]here exists no issue in the prosecution of the crime of rape regarding defendant's perception of the requisite attendant circumstances (e.g., whether or not the woman had given consent)."); *see also* 75 C.J.S. *Rape* § 55 (2019) ("The crime of rape has always been considered a general-intent crime…."). Nothing in the text of the statute indicates any congressional intent to introduce a higher mens rea than the historical general intent.

Because the antecedent offense was a general intent offense, we can infer by Congress's silence on the mens rea for sexual assault by bodily harm that it impliedly stated a general intent mens rea for that offense.

## C. Statutory Structure

Additionally, the structure of the statute implies a general intent mens rea. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *United States v. Kelly*, 77 M.J. 404, 406–407 (C.A.A.F. 2018) (internal quotation marks omitted) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)); *see also United Sav. Ass'n of Tex. v. Timbers of Inland Forest Assoc.,* 484 U.S. 365, 371 (1988)

cle 120(g)(1)(B), UCMJ, 10 U.S.C. § 920(g)(1)(B) (2012)). In such a case, obviously, that specific intent must be proved as well.

("Statutory construction …. is a holistic endeavor."). Consequently, "[t]his Court typically seeks to harmonize independent provisions of a statute." *Kelly,* 77 M.J. at 407 (alteration in original) (internal quotation marks omitted) (quoting *United States v. Christian*, 63 M.J. 205, 208 (C.A.A.F. 2006)).

Consent is to be determined objectively. Article 120(g)(8)(C), 10 U.S.C. § 920(g)(8)(C) (2012). It is also to be determined from the alleged victim's perspective—consent is his or her *freely given agreement.* Article 120(g)(8)(A), 10 U.S.C. § 920(g)(8)(A) (2012). No reference is made to the accused's perception of consent. Interpreting the statute to require a specific mens rea on the part of the accused with respect to consent, as Appellant suggests, would override these provisions. By contrast, inferring a general intent mens rea, with the ability to raise a mistake of fact defense, avoids this conflict.

Additionally, where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Rodriguez v. United States*, 480 U.S. 522, 525(1987) (internal quotation marks omitted) (citation omitted). In Article 120(b)(2) and 120(b)(3), 10 U.S.C. § 920(b)(2), (3) (2012), Congress provided an explicit mens rea that the accused "knows or reasonably should know" certain facts: that the victim is unaware of the sexual act or incapable of consenting to it. By contrast, under Article 120(b)(1)(B), it is an offense simply to commit a sexual act without consent. The fact that Congress articulated a specific mens rea with respect to the victim's state of mind elsewhere in the statute further demonstrates that the required mens rea in this case is only the general intent to do the wrongful act itself.

### D. Wrongfulness of the Misconduct

Where Congress has clearly implied a mens rea, this Court is obliged to respect that legislative intent. *Haverty*, 76 M.J. at 204. Because we have determined that Congress intended Article 120(b)(1)(B) to state a general intent offense, that is the end of the matter. We also reject Appellant's contention that general intent is insufficient to sepa-

rate wrongful from innocent conduct because sexual intercourse is ordinarily innocent conduct.

As a general intent offense, sexual assault by bodily harm has an implied mens rea that an accused intentionally committed the sexual act. *Cf. United States v. Grant*, 38 M.J. 684, 694 (A.F.C.M.R. 1993) (considering but disbelieving the appellant's assertion that his penis accidentally penetrated the victim's vagina when they were in bed together). No mens rea is required with regard to consent, however.

This does not criminalize otherwise innocent conduct because only *consensual* sexual intercourse is innocent. The burden is on the actor to obtain consent, rather than the victim to manifest a lack of consent. Appellant's actions could only be considered innocent if he had formed a reasonable belief that he had obtained consent. The Government only needed to prove that he had not done so to eliminate the mistake of fact defense. The military judge's instructions properly reflected that.

## IV. Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed.