# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39531 (f rev)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Daniel N. LEE**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 26 February 2020

————————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Bad-conduct discharge, confinement for 6 months and 1 day, and reduction to E-4. Sentence adjudged 30 March 2018 by GCM convened at Robins Air Force Base, Georgia.

*For Appellant:* William E. Cassara, Esquire (argued); Captain David A. Schiavone, USAF.

*For Appellee:* Major Dayle P. Percle, USAF (argued); Lieutenant Colonel Joseph J. Kubler, USAF; Captain Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge POSCH and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Chief Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of two specifications of negligent dereliction of duty, one specification of abusive sexual contact, one specification of indecent exposure, and one specification of assault consummated by a battery, in violation of Articles 92, 120, 120c, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920, 920c, 928.[1,2] The court-martial sentenced Appellant to a bad-conduct discharge, confinement for six months and one day, and reduction to the grade of E-4. The convening authority approved the adjudged sentence, but deferred the adjudged reduction in grade for a period of six months pursuant to Article 57(a), UCMJ, 10 U.S.C. § 857(a), and waived mandatory forfeitures of pay and allowances for the benefit of Appellant's dependent spouse and children until the earlier of six months or Appellant's release from confinement pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b.

Seven issues are presently before this court on appeal: (1) whether the military judge erroneously instructed the court members on the mens rea applicable to reasonable mistake of fact as to consent with respect to abusive sexual contact; (2) whether the military judge abused his discretion by refusing to provide a Defense-requested instruction that the members could consider mistake of fact as to consent in determining whether Appellant's conduct was indecent;[3] (3) whether the military judge abused his discretion by failing to grant multiple defense motions to declare a mistrial; (4) whether the evidence is factually sufficient to support Appellant's conviction for indecent exposure; (5) whether the evidence is factually sufficient to support Appellant's conviction for abusive sexual contact; (6) whether the military judge erred by failing to give *sua sponte* a mistake of fact instruction with regard to the charge of assault consummated by a battery, or in the alternative whether trial defense counsel were ineffective by failing to request such an instruction, and whether Appellant's conviction for assault consummated by a battery is factually sufficient; and (7) whether Appellant is entitled to relief for unreasonable post-trial

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), the Rules for Courts-Martial, and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The court-martial found Appellant not guilty of one specification of abusive sexual contact and one specification of sexual assault in violation of Article 120, UCMJ. In addition, the military judge dismissed with prejudice one specification of negligent dereliction of duty in violation of Article 92, UCMJ.

[3] The court heard oral argument on this issue on 30 September 2019.

and appellate delay.[4] We find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant's court-martial centered on his actions toward several subordinate female Airmen. We describe Appellant's actions with respect to three of these Airmen in turn.

### A. CB

CB[5] met Appellant when he became the Noncommissioned Officer in Charge (NCOIC) of her flight and they were stationed at Robins Air Force Base (AFB), Georgia, in late 2011 or early 2012.[6] CB worked in the same area as Appellant, who was one of CB's supervisors, and initially their relationship was friendly. Both Appellant and CB were married to other individuals at that time. In early 2012, as Appellant and CB were on duty riding together in a vehicle, Appellant suggested they might begin a sexual relationship. CB subsequently testified that she was "a little shocked" but not "bother[ed]" by the suggestion, and she initially "consider[ed]" the proposal. For "a few weeks," while CB considered this proposal, she and Appellant engaged in mutual flirtation. However, CB eventually informed Appellant she was not interested.

Appellant told CB he was "disappointed" by her decision and he persisted in trying to change her mind. According to CB, Appellant became very "handsy" with her, and at various times touched her on the leg, back, buttocks, inner thigh, breasts, and "vaginal area" over her clothing. CB neither consented to the contact nor told Appellant it was "okay" for him to touch her in that way. In addition, Appellant made sexual comments to her, for example suggesting places where the two could have sex. Appellant engaged in this touching and made these comments on numerous occasions, including when the two were on duty riding in a truck together, when Appellant would enter CB's office, and when Appellant would tell CB to enter his windowless office and close the door.

---

[4] Appellant previously raised an additional assignment of error, seeking new post-trial processing due to error in the original staff judge advocate recommendation to the convening authority. The Government conceded error and did not oppose a new post-trial process and action, which this court ordered on 3 May 2019. Appellant's case was redocketed with the court on 30 July 2019 after the new post-trial process and action were accomplished.

[5] CB separated from the Air Force in 2014, before Appellant's trial.

[6] Appellant was a technical sergeant (E-6) at the time.

In early 2013, CB complained to the squadron first sergeant, Senior Master Sergeant (SMSgt) TJ,[7] to the effect that Appellant was bothering her. SMSgt TJ subsequently testified to her recollection that CB said Appellant was "texting [her] and . . . annoying her and trying to talk to her and things like that." SMSgt TJ did not recall that CB said Appellant had touched her inappropriately. As a result of this conversation, SMSgt TJ spoke with Appellant and had "a really good conversation" with him. After that point SMSgt TJ did not receive any further complaints that Appellant was bothering CB.

CB did not report Appellant's behavior to law enforcement before she separated from the Air Force in 2014. In the fall of 2016, the Air Force Office of Special Investigations (AFOSI) contacted CB about Appellant, at which point she disclosed how he had touched her. Appellant's actions with CB were the basis of his conviction for one specification of negligent dereliction of duty for failing to refrain from an unprofessional relationship and one specification of abusive sexual contact.

**B. KB**

KB[8] met Appellant in the fall of 2012. Although they were members of the same squadron and worked in the same building, Appellant was not in KB's supervisory chain. KB's first recollection of interacting with Appellant was when he invited KB and her husband to Thanksgiving dinner. From that point on, KB and her husband became close friends with Appellant and Appellant's wife, KL. Furthermore, according to KB's subsequent testimony, in a "short period of time" KB and her husband began to engage in "inappropriate" joking and "sexualized" conversations with Appellant and KL. The two couples discussed the possibility of a "polyamorous" relationship, and at some point after Thanksgiving 2012, KB and KL performed consensual sexual acts on each other in Appellant's bedroom in the presence of Appellant and KB's husband. However, KB did not engage in any sexual contact with Appellant, or agree to such activity, because KB and her husband were not "comfortable with that idea."

At some point around the end of 2012, Appellant and KB were part of a group of squadron members who attended a college football game. Appellant and KB traveled in the same vehicle to and from the game, an approximately three-hour drive each way. Appellant drove, KB rode in the front passenger seat, and three other Airmen rode in the back seat. Shortly after the game, Appellant stopped at a gas station to put gas in the vehicle; KB stayed in the front seat while the other three Airmen went inside the store. KB had been

---

[7] SMSgt TJ retired from the Air Force before Appellant's trial.

[8] KB remained on active duty in the Air Force as of the time of Appellant's trial.

reading an erotic story on her phone and put her hand in her lap, where her fingers became damp. Appellant finished pumping gas and returned to his seat before the other Airmen returned. According to KB, after Appellant sat down, KB held her fingers up toward his nose and "made a comment along the lines of, 'I feel like you can smell me.'" Appellant responded with "some flirtatious or sexual comment[ ]" that KB could not remember later. However, at that point the other Airmen returned to the vehicle and the sexual banter ceased.

The group returned to Robins AFB late that night. After Appellant dropped off the other three Airmen on the base, he offered to drive KB back to her house, which was off-base but nearby. KB agreed. However, after leaving the base Appellant turned the wrong way, stopped in the dark parking lot of an office building, and locked the vehicle doors. This "scared" KB, who asked Appellant what was he was doing. Appellant responded to the effect that he was aroused by their previous conversation, that it was KB's "fault," and that he "needed to take care of it." Appellant then removed his penis from his pants and began masturbating. KB looked away, although she briefly looked at Appellant at one point for "a second" when he told her to. KB later testified she did not get a "good look" at Appellant, but she knew "what he was doing." KB was "extremely uncomfortable" but did not attempt to unlock the car or exit the vehicle. When Appellant finished, he unlocked the doors and drove KB home without further conversation. KB did not tell her husband what happened. She took a shower. Afterwards, KB saw that she had multiple texts from Appellant, who apologized for what happened and acknowledged he knew she had been uncomfortable. KB did not save these texts, and they were not introduced at trial.

After this incident, KB and her husband essentially continued their friendship with Appellant and KL. KB became pregnant around this time, and she arranged for Appellant (a photographer) to take weekly photos showing the progression of her pregnancy. According to KB, Appellant sexually assaulted her during the second such session, which took place in Appellant's bedroom in approximately January 2013. KB did not report this alleged sexual assault at the time, although afterwards KB went to Appellant's home less frequently and discontinued the pregnancy photos. However, the two couples continued their close relationship; for example, they went on trips together, KL threw a baby shower for KB, KB sent Appellant a topless photo of herself when she was nine months pregnant, and at KB's request Appellant was present in the delivery room for the birth of KB's daughter in August 2013.

KB transferred from Robins AFB to Joint Base Elmendorf-Richardson, Alaska, in 2014 or 2015. At some point thereafter, KB reported her alleged sexual assault by Appellant to her supervisor in Alaska, which led to an investigation by the AFOSI. The court-martial found Appellant not guilty of the alleged sexual assault in January 2013; however, Appellant's actions with KB

were the basis of his conviction for two offenses: one specification of negligent dereliction of duty for failing to refrain from an unprofessional relationship, and one specification of indecent exposure.

## C. KI

In December 2016, Appellant met KI[9] while both were deployed to a base in west Africa. Appellant and KI did not work together directly, but both were involved in planning a social event for the deployed unit. Their first real conversation took place in the tent where KI worked. According to KI's subsequent testimony, they shook hands and Appellant initially spoke with her about the event. However, the conversation ended "very uncomfortably" after Appellant shifted the conversation "from professional Air Force [matters] to issues with his ex-wife and not having enough sex."[10] KI ended the conversation by stating, "I've been through a divorce myself, as well as many others before you. This will get better eventually. Now, have a nice day, I need to hit the gym."

Later the same day, KI encountered Appellant again in the dining facility. KI was speaking with several of her co-workers when Appellant entered and stated, "Oh I thought I heard your voice [addressing KI]. How are you guys doing, and how are you doing?" According to KI, Appellant then immediately moved next to her, "grabbed" her neck with his right hand, and "did a massaging motion" for up to five seconds. Appellant then "grabbed" KI's right arm and "kind of pulled [her] in for one of those awkward side hugs." This "offensive" touching made KI "very uncomfortable," and she responded by "pushing" Appellant off and inventing a fictitious excuse to depart with one of her co-workers. Shortly afterwards, KI spoke with her husband who encouraged her to speak with the AFOSI. After a "couple of days," KI did so.

Appellant's actions with KI were the basis for his conviction for assault consummated by a battery, specifically for "placing his hand around her neck and shoulders and wrapping his arm and hand around her right shoulder in a hug like manner."

---

[9] KI remained on active duty in the Air Force as of the time of Appellant's trial.

[10] Appellant and KL had divorced by this point in time.

## II. DISCUSSION

### A. Instruction as to Mens Rea for Abusive Sexual Contact and Mistake of Fact with respect to Consent

#### 1. Additional Background

At the conclusion of the presentation of the evidence on findings, the military judge instructed the court members as follows, in pertinent part, with respect to the charged offense of abusive sexual contact against CB:

> In order to find [Appellant] guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt of the following elements:
>
> (1) That at or near Robins Air Force Base, on divers occasions, between on or about 11 October 2012 and 31 January 2013, [Appellant] committed sexual contact upon [CB], by touching directly or through the clothing her genitalia, breasts, and inner thigh with his hand;
>
> (2) that [Appellant] did so by causing bodily harm to [CB], to wit: touching directly or through the clothing her genitalia, breasts, and inner thigh with his hand;
>
> (3) that [Appellant] did so with an intent to gratify his sexual desire; and
>
> (4) [Appellant] did so without the consent of [CB].
>
> . . . .
>
> The evidence has raised the issue of mistake of fact as to consent in relation to the offense of abusive sexual contact . . . . There has been evidence tending to show that at the time of the alleged offenses [Appellant] may have mistakenly believed that [CB] consented to . . . the touching of her genitalia, breasts, and inner thigh with his hand.
>
> "Mistake of fact as to consent" is a defense to the offense of abusive sexual contact. Mistake of fact as to consent means the accused held, as a result of ignorance or mistake, an incorrect belief that the other person consented to the sexual conduct as alleged.
>
> The ignorance or mistake must have existed in the mind of [Appellant] and must have been reasonable under all the circumstances. To be reasonable, the ignorance or mistake must have been based on information or lack of it that would indicate to a reasonable person that the other person consented. Additionally,

the ignorance or mistake cannot be based on the negligent failure to discover the true facts.

"Negligence" is the absence of due care. "Due care" is what a reasonably careful person would do under the same or similar circumstances.

. . . .

The prosecution has the burden of proving beyond a reasonable doubt that [Appellant] did not reasonably believe [CB] consented to the sexual contact.

If you are convinced beyond a reasonable doubt that at the time of the charged offense [Appellant] did not believe that [CB] consented to the sexual conduct alleged, the defense does not exist. Furthermore, even if you conclude [Appellant] was under a mistaken belief that [CB] consented to the sexual conduct alleged; if you are convinced beyond a reasonable doubt that at the time of the charged offense [Appellant's] mistake was unreasonable, the defense does not exist.

The Defense did not object to these instructions, nor did trial defense counsel request any additional instructions specifically with respect to the offense of abusive sexual contact.

**2. Law**

Whether the military judge correctly instructed the court members is a question of law we review de novo. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014) (citation omitted). The mens rea requirement applicable to a particular offense is also a question of law that is reviewed de novo. *United States v. Gifford*, 75 M.J. 140, 142 (C.A.A.F. 2016) (citations omitted). However, "[f]ailure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error." Rule for Courts-Martial (R.C.M.) 920(f); *see, e.g.*, *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017). In a plain error analysis, the appellant "has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused." *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011) (footnote omitted) (citation omitted).

In addition, where an appellant "affirmatively declined to object to the military judge's instructions and offered no additional instructions," he may thereby affirmatively waive any right to raise the issue on appeal, even "in regards to the elements of the offense." *United States v. Davis*, ___ M.J. ___,

No. 19-0104, 2020 CAAF LEXIS 76, at *7 (C.A.A.F. 12 Feb. 2020) (citations omitted).

Article 120, UCMJ, provides *inter alia* that a person who commits or causes "sexual contact" upon another person by causing "bodily harm" to that other person is guilty of abusive sexual contact. 10 U.S.C. § 920. "Sexual contact" includes, *inter alia*, "any touching . . . either directly or through the clothing, [of] any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person." 10 U.S.C. § 920(g)(2)(B). "Bodily harm" means "any offensive touching of another, however slight, including any . . . nonconsensual sexual contact." 10 U.S.C. § 920(g)(3).

An accused charged with abusive sexual contact under Article 120, UCMJ, may raise any applicable defense available under the UCMJ or the Rules for Courts-Martial, including the special defense of ignorance or mistake of fact. 10 U.S.C. § 920(f); R.C.M. 916(j). Whether a mistake must be objectively reasonable as well as actual depends on the mens rea applicable to the element of the offense that is in question.

> If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances.

R.C.M. 916(j)(1).

### 3. Analysis

Before we consider Appellant's claim that the military judge incorrectly instructed the court members with regard to Article 120, UCMJ, we address the impact of the recent decision of the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Davis*, cited above, on our analysis.

#### *a. Waiver*

In *Davis*, the CAAF acknowledged its prior precedent holding that, pursuant to R.C.M. 920(f), objections to instructions not raised at trial were forfeited, and were subject to plain error review on appeal. *Davis*, 2020 CAAF LEXIS 76 at *6–7 (citations omitted). However, the CAAF clarified that where trial defense counsel not only failed to raise an objection to findings instructions, but twice told the military judge that the defense had no objections, the appellant had "affirmatively waived any objection" to the instructions. *Id.* at *7 (citations omitted). Therefore, "there [wa]s nothing left for [the CAAF] to correct on appeal." *Id.* (citations omitted).

In Appellant's case, the Defense did not object or request additional instructions with respect to the elements and definitions applicable to the abusive sexual contact against CB charged under Article 120, UCMJ. The Defense did make certain other requests and objections with respect to the findings instructions; but when the military judge asked "Is there anything else," the civilian trial defense counsel responded "No, Your Honor." In light of *Davis*, this affirmative declination to object to the military judge's instructions regarding abusive sexual contact under Article 120, UCMJ, would appear to waive Appellant's right to challenge those instructions on appeal.

However, the CAAF has made clear that the courts of criminal appeals have discretion, in the exercise of their authority under Article 66, UCMJ, 10 U.S.C. § 866, to determine whether to apply waiver or forfeiture in a particular case, or to pierce waiver or forfeiture in order to correct a legal error. *See, e.g.*, *United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018) (quoting *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001)); *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016). Thus, even if Appellant waived this issue, this court must determine whether an error exists that merits piercing his waiver. *See Hardy*, 77 M.J. at 443. On its face, Appellant's assignment of error suggests that the court-martial may have convicted him of abusive sexual contact based on incorrect instructions and a prejudicially flawed understanding of Article 120, UCMJ. Accordingly, we find it appropriate to address the substance of Appellant's claim and to explain why there was no error.

### b. Instructions on Abusive Sexual Contact and Mistake of Fact

Appellant contends that the military judge erred by instructing the court members that, for a defense of mistake of fact as to consent to apply, Appellant's ignorance or mistake as to consent must have been actual and "reasonable"—in other words, that a mens rea requirement of negligence applied to the defense. Appellant cites the United States Supreme Court's decision in *Elonis v. United States*, 135 S. Ct. 2001 (2015), for the proposition that where a statute is silent on the mens rea required to commit an offense, and a scienter requirement is necessary to separate innocent conduct from wrongful conduct, the requisite mens rea must be greater than simple negligence. In *Elonis*, the Court explained "that 'mere omission from a criminal enactment of any mention of criminal intent' should not be read 'as dispensing with it,'" reflecting the "basic principle that 'wrongdoing must be conscious to be criminal.'" *Id.* at 2009 (quoting *Morissette v. United States*, 342 U.S. 246, 250, 252 (1952)). Therefore, "[w]hen interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Id.* at 2010 (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)) (additional citation and internal quotation marks omitted). Appellant contends that because the

statutory scheme of Article 120, UCMJ, specifies no mens rea with regard to consent, the Government was required to prove beyond a reasonable doubt that Appellant acted with reckless disregard rather than negligence with respect to CB's consent.

It is true the Court further commented that it had "long been reluctant to infer that a negligence standard was intended in criminal statutes." *Id*. at 2011 (internal quotation marks and citation omitted). It is also true that the CAAF has applied *Elonis* to find that, for example, the Government was required to prove a mens rea of recklessness in prosecuting the violation of a particular service regulation against hazing under Article 92, UCMJ. *United States v. Haverty*, 76 M.J. 199, 208 (C.A.A.F. 2017). Nevertheless, Appellant's argument is without merit.

The CAAF's decision in *United States v. McDonald*, 78 M.J. 376 (C.A.A.F. 2019), decided after Appellant submitted his assignments of error, resolves this issue against him. There the CAAF analyzed the statutory construction of Article 120, UCMJ, in the context of a conviction for sexual assault by bodily harm, specifically the penetration of the vulva by the penis without consent. *Id*. at 378. The court concluded that "Congress clearly intended a general intent mens rea for Article 120(b)(1)(B), 10 U.S.C. § 920(b)(1)(B) (2012), sexual assault by bodily harm." *Id*. at 379. The CAAF reached this conclusion for four reasons: (1) the plain text of the statute, (2) the precursor offenses from which sexual assault by bodily harm evolved, (3) the presence of the specific intent of negligence elsewhere in the statute, and (4) a general intent mens rea did not criminalize innocent conduct. *Id*.

With regard to the plain text of Article 120, the CAAF explained "[t]he statutory elements are thus ultimately straightforward: it is an offense to commit a sexual act without consent, although an *honest and reasonable (nonnegligent) mistake of fact as to consent serves as an affirmative defense*. Such a construction typically suggests a general intent offense." *Id*. (emphasis added) (citations omitted). With respect to *Elonis*, the CAAF explained "the existence of a mens rea is presumed in the absence of clear congressional intent to the contrary," but "a general intent mens rea is not the absence of a mens rea, and such offenses remain viable in appropriate circumstances . . . ." *Id*. (citing *Elonis*, 135 S. Ct. at 2010; *Haverty*, 76 M.J. at 203–04).

The offense of abusive sexual contact by bodily harm in violation of Article 120, UCMJ, for which Appellant was convicted is highly analogous to the offense of sexual assault by bodily harm in violation of Article 120, UCMJ, which the CAAF addressed in *McDonald*. Indeed, 10 U.S.C. § 920(d) provides that a person is guilty of abusive sexual contact if that person commits or causes sexual contact, "if to do so would violate [10 U.S.C. § 920(b)] (sexual assault) had the sexual contact been a sexual act." In other words, the elements are the

same except as to whether the accused committed a "sexual act" (sexual assault) or merely "sexual contact" (abusive sexual contact). Moreover, both offenses share a common definition of "bodily harm," which includes "any nonconsensual sexual act or nonconsensual sexual contact." 10 U.S.C. § 920(g)(3). In *McDonald*, as in Appellant's case, the appellant was convicted of violating Article 120, UCMJ, on a theory of bodily harm by nonconsensual sexual conduct. *See* 78 M.J. at 378.

We find no meaningful distinction between Appellant's case and *McDonald* in this respect. It is true that Appellant's conviction for abusive sexual contact did require one aspect of specific intent not present in *McDonald*—that Appellant committed the sexual contact with an intent to gratify his sexual desire. However, the military judge properly instructed the court members on that specific intent requirement, and Appellant's intent to gratify his sexual desire is not the basis for Appellant's allegation of error. In this case, as in *McDonald*, the alleged error is that *Elonis* required the Government to prove Appellant was at least reckless with regard to CB's consent. However, in this case, as in *McDonald*, the military judge properly instructed the members that any mistake of fact as to CB's consent must have been non-negligent. *See id.* at 379. Therefore we find no error, much less plain error.

## B. Defense-Requested Instruction on Indecent Exposure

### 1. Additional Facts

At trial, after the presentation of evidence, the military judge provided the parties with a draft of his anticipated findings instructions. His draft instructions with regards to Charge III, indecent exposure to KB, read as follows:

> In order to find [Appellant] guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt of the following elements:
>
> (1) That at or near Robins Air Force Base, Georgia, between on or about 1 November 2012 and on or about 31 December 2012, [Appellant] exposed his genitalia;
>
> (2) That such exposure was intentional; and
>
> (3) That such exposure was done in an indecent manner.
>
> "Indecent manner" means conduct that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations.
>
> "Intentional" means willful or on purpose. An act done as the result of a mistake or accident is not done "intentionally."

> In determining whether an intentional exposure was indecent, you should consider all the facts and circumstances surrounding the exposure. Specifically, factors you should consider include but are not limited to: whether the person witnessing the exposure consented to the exposure; whether the exposure was made in a public or private setting; and the prior relationship between [Appellant] and the alleged victim.

The military judge noted on the record that he had not included the following instruction requested by the Defense: "if [Appellant] reasonably believed that there was consent that would be a factor for the members to consider in determining whether or not . . . the exposure alleged in the Specification of Charge III was indecent." The Defense objected to the draft instructions. Civilian trial defense counsel argued that the military judge's proposed instructions failed to sufficiently alert the members that they could consider not only actual consent, but reasonable mistake of fact as to consent in determining whether the conduct was indecent. The Defense argued that, although consent was not an element of the offense of indecent exposure, and mistake as to consent was not a defense, both consent and reasonable mistake were relevant to determining whether the exposure was done in an "indecent manner."

In response, the military judge noted the factors listed in his draft instruction were explicitly not exclusive, and he stated the "prior relationship" language in his proposed instruction would "capture[ ] what the defense is pointing to: the fact that they had an incident in the car previously. So I think that's all captured there so I'm not going to add that additional specific language." Accordingly, the military judge instructed the court members on "indecent exposure" in accordance with his proposed instructions set forth above.

### 2. Law

"[A]ny party may request that the military judge instruct the members on the law as set forth in the request." R.C.M. 920(c). However, the military judge has substantial discretionary power in deciding what non-required instructions to give. *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (citing R.C.M. 920(c), Discussion; *United States v. Smith*, 34 M.J. 200 (C.M.A. 1992)). Denial of a defense-requested instruction is reviewed for abuse of discretion. *United States v. Carruthers*, 64 M.J. 340, 345–46 (C.A.A.F. 2007) (citations omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action

must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (quotation omitted).

We apply a three-part test to evaluate whether the failure to give a requested instruction is error: "(1) [the requested instruction] is correct; (2) it is not substantially covered in the main [instruction]; and (3) it is on such a vital point in the case that the failure to give it deprived [Appellant] of a defense or seriously impaired its effective presentation." *Carruthers*, 64 M.J. at 346 (first and second alteration in original) (quoting *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003)). All three prongs of the test must be satisfied in order to find error. *United States v. Barnett*, 71 M.J. 248, 253 (C.A.A.F. 2012).

### 3. Analysis

As an initial matter, we note that lack of consent is not an element of indecent exposure charged under Article 120c, UCMJ, and mistake of fact as to the absence of consent was not a special defense in issue with regard to the indecent exposure in KB's presence for which Appellant was convicted. *See generally* 10 U.S.C. § 920c; R.C.M. 916(a), (j). Therefore, R.C.M. 920(e) did not *require* the military judge to instruct the members on consent or on mistake of fact as to consent with regard to the charged indecent exposure. The parties agree that, on appeal, the applicable test is whether the military judge abused his discretion by declining to give a defense-requested instruction, applying the three-part test set forth in *Carruthers*, 64 M.J. at 346.

Appellant contends the military judge did abuse his discretion. He avers the instruction requested by the Defense was a correct statement of law because Appellant's mistake of fact as to consent, like actual consent which the military judge explicitly included in his instruction, is one of the "circumstances" relevant to whether the act was indecent. Appellant further contends the requested instruction on mistake of fact was not covered by the instructions given for essentially two reasons: first, the instruction to consider "all facts and circumstances" including the "prior relationship" was insufficiently specific to alert the members that Appellant's mistake would be a relevant factor; and second, by specifically instructing the members they "should consider" whether KB *consented* without referring to *mistake as to consent* likely led the members to ignore evidence of a mistake. Similarly, Appellant concludes the military judge deprived Appellant of a defense or impaired its presentation because the instructions given permitted the members to ignore evidence of a mistake as to consent as a factor they should consider.

We are not persuaded the military judge abused his discretion. We agree with Appellant that some minor variation of the requested instruction to the effect that the court members should consider whether Appellant reasonably believed KB consented to the exposure would be a correct statement of law,

just as the military judge instructed the members that they "should consider all the facts and circumstances surrounding the exposure." However, Appellant fails to satisfy the second and third elements of the *Carruthers* test. *See* 64 M.J. at 346.

We find the requested instruction was "substantially covered" by the instruction given. The military judge instructed the members to consider "all the facts and circumstances surrounding the exposure," specifically including "the prior relationship between the accused and the alleged victim." These instructions threw open all of KB's prior interactions with Appellant that might have arguably contributed to a mistake on his part, including the prior incident at the gas station, for the members' consideration on the question of indecency. If the members believed the prior interactions between KB and Appellant rendered his behavior not indecent, whether based on a reasonable mistake or any other consideration, the military judge's instructions would have led the members to acquit Appellant of the charge.

We are not persuaded the military judge abused his discretion by failing to "connect the dots" for the members—as Appellant puts it—between absence of mistake as to consent and indecency. The essential question was indecency, as defined by the military judge, and neither consent nor reasonable mistake regarding consent determined the resolution of that question. Even if the members found Appellant was reasonably mistaken as to consent, they could still properly convict him of indecent exposure if they found his behavior was nevertheless indecent under the circumstances.

Similarly, we do not find the military judge's ruling "deprived [Appellant] of a defense or seriously impaired its effective presentation." *Id*. It is true that during findings argument Appellant's civilian trial defense counsel used KB's prior behavior at the gas station, as well as her failure to leave the vehicle during the exposure or to report it until years afterward, to suggest she actually consented to the exposure. However, counsel also repeatedly suggested Appellant *reasonably believed* KB consented to his behavior even if KB did not actually consent, stating *inter alia,* "He thinks she's still down for this . . . . [I]t was reasonable for him to believe at that point that she was still interested in that sort of an encounter." Thus the Defense was able to present to the court members its theory that Appellant's reasonable belief that KB consented rendered his conduct not indecent.

Appellant's reliance on the CAAF's decision in *United States v. Baker*, 57 M.J. 330 (C.A.A.F. 2002), is misplaced. *Baker* involved an 18-year-old appellant's allegedly indecent acts with his 15-year-old girlfriend, which the girlfriend did not find offensive. *Id*. at 331. The majority opinion found the military judge's general instruction that the members should "consider all the evidence [they] have, and [they]'ve heard on the issue of what's indecent," was "clearly

inadequate guidance for the members to decide the issue of the indecency of [the] appellant's conduct." *Id.* at 331.[11] However, the CAAF's opinion rested heavily on the military judge's failure to correct the assistant trial counsel's misstatement of the law during findings argument, to the effect that the girlfriend's consent to the acts was "irrelevant" to their indecency because she was under 16 years of age. *Id.* at 332. The CAAF's conclusion was reinforced by the fact the members posed a question to the military judge indicating they were confused as to what they could consider on the question of indecency. *Id.* at 332–33. Thus *Baker* stands for the proposition that factual consent and the nature of the prior relationship between the accused and the alleged victim of indecent exposure are appropriate considerations in assessing indecency; however, that is exactly as the military judge instructed the court members in Appellant's case. *Baker* does not stand for the proposition that a military judge abuses his discretion by failing to explicitly instruct that members could or should consider whether the accused reasonably believed the alleged victim consented to an alleged indecent act.

## C. Denial of Motions for Mistrial

Appellant contends the military judge abused his discretion by denying multiple defense motions for a mistrial, which were primarily based on references to uncharged misconduct in assistant trial counsel's opening statement and in AC's testimony. In addition, he argues his trial defense counsel were ineffective for failing to object to assistant trial counsel's opening statement.

### 1. Additional Background

In Specification 2 of Charge II, Appellant was charged with committing abusive sexual contact on CB in violation of Article 120, UCMJ, by touching her genitalia, breasts, and inner thigh with his hand without her consent, with the intent to gratify his sexual desire, between on or about 11 October 2012 and 31 January 2013. The sworn charge and specification were received by the summary court-martial convening authority on 11 October 2017. Therefore, prosecution of any instances of the alleged abusive sexual contact against CB that occurred prior to 11 October 2012 would be barred by the statute of limitations. *See* Article 43, UCMJ, 10 U.S.C. § 843.

During her opening statement, assistant trial counsel described an undated incident when Appellant and his wife KL invited CB to wash her clothes at their house when CB's clothes dryer was broken. According to assistant trial counsel, when CB was in the laundry room Appellant "sneak[ed] in behind her," reached over CB's shoulder and under her shirt and bra, and grabbed her

---

[11] The appellant was charged with indecent acts with a female under the age of 16 years in violation of Article 134, UCMJ, 10 U.S.C. § 934. *Baker*, 57 M.J. at 330–31.

breast. When CB jumped away and verbally confronted Appellant, he responded that another female also "gets mad when I do that to her, too." Trial defense counsel did not object to the Prosecution's opening statement.

During the direct examination of CB, the following colloquy took place:

> Q [Trial Counsel]: Now, there was a time when you had borrowed his laundry machine; is that correct?
>
> A [CB]: Correct.
>
> Q: Do you recall when that was?
>
> A: I don't remember the specific day, or really even the specific month. I feel as though it was maybe around April.
>
> Q: Of 2013 or --
>
> A: Of 2012. Maybe later on in the spring.
>
> Q: So this was earlier on in that window of uncomfortable touching?
>
> A: Yes.
>
> CDC [Civilian Defense Counsel]: Objection, Your Honor. If I could request a[n] [Article] 39(a) [session]?
>
> MJ [Military Judge]: No, I think I understand. Yeah, all, right.

The military judge then held a session outside the presence of the court members pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a). The Defense objected on the basis of the statute of limitations as well as lack of notice of the Government's intent to offer evidence that Appellant committed other uncharged sexual offenses, as required by Mil. R. Evid. 413(b). In response, trial counsel conceded CB was referring to the "breast grab under the clothes" incident, that based on the date CB testified to it was not a charged offense, that no Mil. R. Evid. 413 notice was provided, and furthermore that any testimony about it would also violate Mil. R. Evid. 403. Accordingly, trial counsel indicated the Prosecution was "just going to move on." The military judge sustained the objection. Before the court members returned, the military judge instructed CB "not to bring . . . up or talk about" the April 2012 incident. When the court members returned, the military judge instructed them that he "did sustain defense counsel's objection to that line of questions."

After the initial direct and cross-examinations were complete, two of the court members had questions for CB. The military judge posed these questions to CB on the members' behalf, and in his words "expand[ed] on" their questions to some extent. This colloquy led to the following exchange:

Q [MJ]: [A]fter you told [Appellant] you weren't interested in the polyamorous kind of situation, did the touching continue after that?

A [CB]: It did. For a little while, it wasn't to the point where I felt like I should worry about it. And then there was an incident that did take place where that was very evident to me that I could be, I guess, in the danger of him crossing definite boundaries.

Q: Okay. And you talked about some of those incidents in his office where he was touching your thighs, and other parts of your body?

A: The first time that it happened was the incident in the laundry room that we're not allowed to talk about.

CDC: Objection, Your Honor.

MJ: Members, disregard that reference.

Q: No, I'm talking about the incidents that you talked about in his office. Can you pinpoint more exactly when that might have occurred?

A: As far as like when the situation happened in the office?

Q: Yes. The touching incidents.

A: They were over a span of time. I would say for about three or four months' span of time.

Q: Do you remember what -- I mean, you remember, obviously, the January timeframe, and you said something about --

A: It's --

Q: -- New Year's Eve.

A: I would say it definitely, I guess, started -- I don't know -- somewhere in the summer of 2012 and --

CDC: Objection, Your Honor.

After another Article 39(a) session, the military judge instructed the court members to "disregard the last question and answer from the witness . . . ."

After CB completed her testimony and then another witness testified, the court-martial recessed for the day. The following morning, the Defense moved for a mistrial on the basis that CB's inadmissible testimony was so prejudicial that a curative instruction would be inadequate and only serve to highlight the excluded information. Based on CB's references to the laundry room incident

and unwanted touching in the summer of 2012, the Defense requested either a mistrial or severance as to the charged offenses involving CB. Trial counsel opposed the motion and argued the court members would be able to follow the military judge's instructions to disregard the inadmissible information. The military judge denied the request, concluding that the limited and non-specific inadmissible testimony could be corrected by instructions and did not "cast substantial doubt upon the fairness of the proceedings."

Later in the trial, KB was recalled by the Government as a rebuttal witness. KB described having lunch with Appellant, Appellant's wife KL, and CB's then-estranged husband. KB testified that Appellant and CB's husband "were discussing how they put a tracking device for use . . ." before she was interrupted by a hearsay objection from civilian trial defense counsel. In response, trial counsel stated the testimony was admissible as statements by the accused, as non-hearsay offered for the effect on the listener, and "essentially [the] co-conspirator exception." The military judge granted the Defense's request for another Article 39(a) session.

Civilian trial defense counsel continued his objection to KB's testimony and again moved for a mistrial with respect to the alleged offenses involving CB. He cited these references to additional uncharged misconduct by Appellant toward CB—that he was involved in planting a tracking device as a "co-conspirator" with CB's estranged husband—in combination with the previous references to the uncharged laundry room incident. Civilian trial defense counsel's argument prompted the following exchange with the military judge regarding the laundry room incident:

> MJ: . . . I can only assume that trial counsel . . . didn't intentionally try to introduce evidence that they knew was going to be inadmissible at trial --
>
> CDC: I'm not inferring any bad faith. The defense was very well aware that that was well before the charged timeframe.
>
> MJ: Then why didn't you object at the time when trial counsel made that --
>
> CDC: We should have objected. I would have objected. We failed --
>
> MJ: But you didn't.
>
> CDC: -- we failed to do that. We were ineffective in doing that.
>
> MJ: I assumed that the witness just came up with a different date that hadn't previously been mentioned. You know, since her recollection of the dates was often very fluid I assumed that she

was giving a date that the parties weren't aware of and that's why I only heard an objection after that point.

CDC: We should have objected. The defense was aware of the fact this was before the charged timeframe.

The military judge denied the motion for mistrial "based on the little bit of information that came out just now." When the members returned, the military judge instructed them to "disregard the last question and the answer of the witness."

Later in the trial, shortly before the military judge provided his initial instructions on findings, trial counsel brought to the military judge's attention that the president of the panel, Lieutenant Colonel (Lt Col) C, had—contrary to the military judge's initial instructions—spoken with a member of the legal office about an issue unrelated to Appellant's trial. At the Defense's request, the military judge questioned Lt Col C, who confirmed he had spoken with the chief of military justice (not one of the trial counsel) for less than five minutes about an ongoing disciplinary matter involving a member of his squadron that was entirely unrelated to Appellant's case. Neither party requested additional questions nor sought to challenge Lt Col C's continued participation in the trial.

The military judge's findings instructions included the following:

You may have heard evidence from [CB] that either stated or implied that she was subjected to unwanted touching by [Appellant] prior to 11 October 2012. [Appellant] is not charged with any touching prior to 11 October 2012. To the extent that you believe that [CB] referred to unwanted touching prior to 11 October 2012, you must disregard that evidence entirely. Evidence of such incidents -- if it exists -- is not admissible for any purpose in this trial.

Therefore, to the extent that you believe you may have heard such evidence, I am instructing you that it may play no role in your deliberations or in your consideration of the issues in evidence in this case. For example, you may not consider it as any suggestion or implication that [Appellant] has generally bad character or to speculate as to whether [Appellant] may be guilty of other uncharged offenses with respect to [CB].

During opening statements you may have heard assistant trial counsel describe an act regarding [Appellant's] groping of [CB] on a breast in a laundry room. I will remind you that opening statements are not evidence; they are merely a recitation of what

counsel expects the evidence will show. There is no evidence before you that such an act occurred; therefore, you should disregard any reference to such an incident by counsel.

This instruction does not apply to or limit your consideration of evidence of any consensual acts and statements by [CB] or [KB], to include any acts and statements directed toward [Appellant] that may be considered sexual in nature during the uncharged timeframe prior to 11 October 2012. You may consider such evidence on the question of whether or not [Appellant] may have reasonably believed that [CB] or [KB] consented to later sexual acts or contact with which [Appellant] is charged.

The Defense objected generally that these instructions did not cure the previous alleged errors; however, the Defense did not request any specific further additions to or deletions from these findings instructions.

After findings, during the parties' discussion of sentencing instructions with the military judge, the Defense renewed its motion for a mistrial with respect to the specification of abusive sexual contact against CB. Civilian trial defense counsel cited cumulative error based on the matters previously raised, and argued the findings demonstrated the military judge's instructions had failed to cure the errors. He further argued Lt Col C's failure to abide by the military judge's instruction not to interact with members of the legal office undermined confidence that the members followed the findings instructions. The military judge again denied the motion to declare a mistrial.

### 2. Law

We review a military judge's ruling on a motion for mistrial for a clear abuse of discretion. *United States v. Coleman*, 72 M.J. 184, 186 (C.A.A.F. 2013) (quoting *United States v. Ashby*, 68 M.J. 108, 122 (C.A.A.F. 2009)). "The military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceeding which casts substantial doubt upon the fairness of the proceedings." R.C.M. 915(a). "Declaration of a mistrial is a drastic remedy, and such relief will be granted only to prevent a manifest injustice against the accused." *United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A. 1990) (citation omitted). "Because of the extraordinary nature of a mistrial, military judges should explore the option of taking other remedial action, such as giving curative instructions." *Ashby*, 68 M.J. at 122 (citations omitted). A mistrial should only be granted "when 'inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of the members.'" *United States v. McFadden*, 74 M.J. 87, 89–90 (C.A.A.F. 2015) (quoting *United*

*States v. Diaz*, 59 M.J. 79, 92 (C.A.A.F. 2003) (quoting R.C.M. 915(a), Discussion)).

The Sixth Amendment[12] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citation omitted).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Id.* (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The burden is on the appellant to demonstrate deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted).

"The cumulative effect of all plain errors and preserved errors is reviewed *de novo*." *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011) (citation omitted). "Under the cumulative-error doctrine, 'a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding.'" *Id.* (quoting *United States v. Banks*, 36 M.J. 150, 170–71 (C.M.A. 1992)). Cumulative error warrants reversal only if the appellate court finds the appellant was denied a fair trial. *Id.* (citing *Banks*, 36 M.J. at 371).

### 3. Analysis

We find the military judge did not abuse his discretion by denying the motions for mistrial. Declaration of a mistrial is a drastic and disfavored remedy, and is not appropriate when curative instructions are adequate. *See McFadden*, 74 M.J. at 89–90 (citations omitted). In this case, the military judge not only sustained timely objections to the inadmissible testimony, but also gave

---

[12] U.S. CONST. amend. VI.

strong and specific instructions that references to unwanted touching of CB prior to 11 October 2012 could not be used for any purpose.

Although assistant trial counsel described the laundry room incident in her opening statement, the military judge repeatedly instructed the members that opening statements are not evidence. He followed this up with a specific instruction that there was no evidence of such an act before the members, and therefore they should disregard these comments by the assistant trial counsel.

We may presume the court members followed the military judge's instructions absent evidence to the contrary. *See United States v. Stewart*, 71 M.J. 38, 42 (C.A.A.F. 2012) (quoting *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000)). We are not persuaded that Lt Col C's brief conversation with another member of the legal office, who was not a prosecutor in Appellant's case, about an ongoing and unrelated issue, and which prompted no further inquiry or challenge from the Defense, undermines the presumption that the court members were able to follow the military judge's substantive instructions on how to deliberate on the evidence in the court-martial. We conclude the military judge did not clearly abuse his discretion in finding the favored remedy of curative instructions was adequate, and concluding that the disfavored remedy of mistrial was not "manifestly necessary in the interest of justice." *See* R.C.M. 915(a); *Coleman*, 72 M.J. at 186 (citation omitted).

Appellant's claim that he was denied effective assistance of counsel fails for similar reasons. We need not resolve whether Appellant can satisfy the first two prongs of the test articulated in *Gooch*, because we perceive no reasonable probability of a different result had trial defense counsel objected to the opening statement. *See Gooch*, 69 M.J. at 362 (citation omitted). As described above, the military judge provided strong and specific instructions that the court members must disregard the assistant trial counsel's comments and the inadmissible testimony from CB. Accordingly, we presume this information did not play a role in the members' findings, and Appellant was not prejudiced by it.

## D. Factual Sufficiency of Indecent Exposure

### 1. Law

We review issues of factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,'

applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

The elements of indecent exposure for which Appellant was convicted included the following: (1) that at or near Robins AFB, Georgia, between on or about 1 November 2012 and on or about 31 December 2012, the accused exposed his genitalia to KB; (2) that the exposure was intentional; and (3) that the exposure was done in an indecent manner. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 45c.b.(6). "The term 'indecent manner' means conduct that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." 10 U.S.C. § 920c.(d)(6).

**2. Analysis**

Appellant proffers a number of arguments as to why this court should not be convinced beyond a reasonable doubt of his guilt of indecently exposing himself to KB. Appellant notes the exposure occurred in a dark parking lot, apparently unobserved by anyone other than KB. He further contends that, within the context of his "unusual" relationship with KB, his act was not indecent. Appellant points to KB putting her damp fingers to Appellant's nose at the gas station earlier that day, as well as KB's willingness to engage in sexual acts with KL in Appellant's presence some days before. He also notes KB's continued close and apparently friendly association with Appellant and KL for some time after the alleged exposure. Furthermore, Appellant argues KB's account of the incident, including her failure to leave the vehicle or call her husband in response to Appellant's supposedly offensive conduct, and KB's statement that Appellant "made" her look at him, is not believable. Appellant also attacks KB's credibility more broadly, asserting she may have had a motive to falsify testimony against him because KB blamed Appellant for the loss of her friendship with KL. Appellant also suggests KB's alleged lack of cooperation in providing discovery to the Defense, inconsistent statements by KB with respect to her alleged subsequent sexual assault by Appellant, and Appellant's acquittal of that alleged sexual assault also undermine KB's credibility.

However, Appellant does not substantially challenge the essential facts of the indecent exposure—that, having offered to drive KB home, he stopped his vehicle in a dark parking lot, exposed his penis, and masturbated in full view of KB who was seated next to him in the vehicle. We acknowledge that the prior relationship between Appellant and KB is relevant to determining whether Appellant's act was indecent. Nevertheless, the fact that KB, at an

earlier time that day, made a gesture toward Appellant that was itself arguably sexually vulgar does not negate the nature of Appellant's act. Nor did KB's decision to endure Appellant's act without leaving the vehicle, nor her decision not to immediately report it, nor even her decision to continue associating with Appellant for some time afterwards establish that Appellant's act was not indecent at the time it was committed. Having weighed the evidence in the record of trial and having made allowances for not having personally observed KB as the court members did, we are satisfied beyond a reasonable doubt that Appellant's actions were "grossly vulgar, obscene, and repugnant to common propriety, and tend[ed] to excite sexual desire or deprave morals with respect to sexual relations." 10 U.S.C. § 920c.(d)(6); *see Turner*, 25 M.J. at 325. Accordingly, we find Appellant's conviction for indecent exposure factually sufficient.

## E. Factual Sufficiency of Abusive Sexual Contact

### 1. Law

We review issues of factual sufficiency de novo. *Washington*, 57 M.J. at 399 (citation omitted). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 324.

The elements of abusive sexual contact for which Appellant was convicted included the following: (1) that at or near Robins AFB, on divers occasions, between on or about 11 October 2012 and 31 January 2013, Appellant committed sexual contact upon CB by touching directly or through the clothing her genitalia, breasts, and inner thigh with his hand; (2) that Appellant did so by causing bodily harm to CB, to wit: touching directly or through the clothing her genitalia, breasts, and inner thigh with his hand; (3) that Appellant did so with an intent to gratify his sexual desire; and (4) that Appellant did so without CB's consent. *See MCM*, pt. IV, ¶ 45.b.(7)(b). "The term 'bodily harm' means any offensive touching of another, however slight, including any nonconsensual . . . sexual contact." 10 U.S.C. § 920(g)(3).

### 2. Analysis

CB's testimony provided evidence of each of the elements of the abusive sexual contact for which Appellant was convicted. However, Appellant avers CB's testimony is not credible for two reasons.

First, Appellant contends CB had a significant motive to fabricate allegations against him. In her testimony, CB acknowledged that by early 2013, CB's marriage was foundering, and around that time she was disciplined for engaging in unprofessional relationships with two master sergeants in her unit. In particular, CB testified in March 2013 she received nonjudicial punishment under Article 15, UCMJ, for violating an order not to have contact with one of

these individuals, then-Master Sergeant DM, who was also disciplined for his relationship with CB. CB further acknowledged that, at the time of Appellant's trial, she was still in a relationship with DM, who had since retired from the Air Force. Appellant contends this is all relevant because Appellant remained friends with CB's estranged husband during this time, and CB suspected Appellant—perhaps motivated in part by CB's rejection of Appellant's advances—of collaborating with CB's husband to get CB in trouble for her unprofessional relationships. Appellant posits CB thus had a motive to fabricate allegations of abusive sexual contact to retaliate against Appellant for damaging her career and that of her significant other, DM.

The court members observed CB's testimony and evidently found her credible. CB did not report Appellant's abusive sexual contact to law enforcement in 2013, and according to SMSgt TJ's testimony CB did not tell SMSgt TJ that Appellant touched her. In response to a question from the court members, CB testified that although she knew what Appellant did was a crime, she did not report it at the time it was occurring in part because:

> I didn't want to disrupt his family life. I didn't want to - - I kind of knew what could happen if these [allegations] were brought forward. I didn't feel as though what he was doing was affecting anybody else but me, and I felt as though it was better to just take it and deal with it than to hurt anybody else, or to cause any pain with his family or his children.

We are not persuaded that, having decided not to raise these allegations in 2012 or early 2013, CB would be motivated to fabricate false allegations in the fall of 2016, over three and a half years after the fact and two years after her own separation from the Air Force. We find it more plausible that CB provided honest answers when the AFOSI contacted her after other allegations of sexual misconduct by Appellant had come to light.

Appellant's second argument focuses on a contradiction between the testimony of CB and that of SMSgt TJ. As described above, SMSgt TJ testified that CB complained that Appellant was "texting [her] and . . . annoying her and trying to talk to her and things like that," but did not allege that he was touching CB inappropriately. In contrast, CB testified that in March 2013 she told SMSgt TJ "that there [wa]s physical touching going on." Appellant avers SMSgt TJ has "no reason to lie," and thus CB testified untruthfully. Again, we are not persuaded. Setting aside the fact that the members observed both witnesses testify, and accepting for purposes of argument that SMSgt TJ's version is accurate, we are not persuaded that CB's inaccurate memory five years after the fact that she included touching in her list of complaints to the first sergeant about Appellant's inappropriate behavior materially undermines the credibility of her testimony regarding Appellant's repeated abusive sexual contact.

Having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses as the court members did, we are satisfied beyond a reasonable doubt that Appellant's conviction for abusive sexual contact is factually sufficient. *See Turner*, 25 M.J. at 325.

**F. Mistake of Fact Instruction as to Assault Consummated by Battery**

**1. Law**

The adequacy of a military judge's instructions is reviewed de novo. *United States v. Dearing*, 63 M.J. 478, 482 (C.A.A.F. 2006) (citations omitted). Whether the evidence reasonably raises a required findings instruction under R.C.M. 920(e) is also a question of law we review de novo. *United States v. Stanley*, 71 M.J. 60, 61 (C.A.A.F. 2012) (citations omitted). However, if an accused fails to preserve an instructional error by an adequate objection or request, we test for plain error, even for "required" instructions. *Id.* "Under a plain error analysis, the accused 'has the burden of demonstrating that (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'" *Payne*, 73 M.J. at 23 (quoting *United States v. Tunstall*, 72 M.J. 191, 193–94 (C.A.A.F. 2013)). In addition, where an appellant affirmatively declines to object to the military judge's instructions and offered no additional instructions, he may thereby affirmatively waive any right to raise the issue on appeal. *Davis*, 2020 CAAF LEXIS 76, at *7.

In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland*, 466 U.S. at 687, and begin with the presumption of competence announced in *Cronic*, 466 U.S. at 658. *See Gilley*, 56 M.J. at 124 (citation omitted). We review allegations of ineffective assistance de novo, using the three-part test articulated in *Gooch* to determine whether the presumption of competence has been overcome. 69 M.J. at 362 (citations omitted). The burden is on the appellant to demonstrate both deficient performance and prejudice. *Datavs*, 71 M.J. at 424 (citation omitted).

We review issues of factual sufficiency de novo. *Washington*, 57 M.J. at 399 (citation omitted). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 324.

The elements of assault consummated by a battery for which Appellant was convicted included the following: (1) that at the place and time alleged, Appellant did bodily harm to KI; (2) that Appellant did so by placing his hand on her neck and shoulders and by wrapping his arm around her right shoulder in a hug like manner; and (3) that the bodily harm was done with unlawful force or

violence. *See MCM*, pt. IV, ¶ 54.b.(2). "'Bodily harm' means any offensive touching of another, however slight." *MCM*, pt. IV, ¶ 54.c.(1)(a).

### 2. Analysis

Appellant contends the military judge committed plain error by failing to instruct the court members *sua sponte* with regard to the special defense of mistake of fact as to the charged assault consummated by a battery against KI. In addition, Appellant asserts trial defense counsel were ineffective in failing to request such an instruction. Finally, Appellant asserts the evidence is factually insufficient to support his conviction for this offense.

We conclude otherwise. The essential flaw that undermines each of these arguments is the absence of any evidence raising a potential mistake of fact. Nevertheless, we address each argument in turn.

### a. Sua Sponte *Instruction by Military Judge*

The military judge's instructions on findings "shall include . . . [a] description of any special defense under R.C.M. 916 *in issue* . . . ." R.C.M. 920(e)(3) (emphasis added). R.C.M. 916(j) provides: "[I]t is [generally] a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense." However, "[w]hether an instruction on a possible defense is warranted in a particular case depends upon the legal requirements of that defense and the evidence in the record." *United States v. Jones*, 49 M.J. 85, 90 (C.A.A.F. 1998). A special defense is "in issue" only when "some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose." *Stanley*, 71 M.J. at 61 (quoting *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007)).

We note that in light of *Davis*, 2020 CAAF LEXIS 76, at *7, trial defense counsel's failure to request a mistake of fact instruction may have waived as well as forfeited the issue on appeal, notwithstanding a military judge's independent duty to instruct on any special defense that is in issue. However, we need not definitively decide that point for two reasons. First, as described above in relation to Appellant's first assignment of error, this court may pierce an appellant's waiver in order to address a legal error. *See, e.g.*, *Hardy*, 77 M.J. at 442–43 (citations omitted); *Chin*, 75 M.J. at 223. Second, under any standard of review, Appellant's argument is without merit.

The military judge did not err, much less commit plain error, by failing to instruct the court members on mistake of fact as to assault consummated by battery on KI because there was no evidence to support such a theory. Tellingly, Appellant fails to identify any evidence of an honest and reasonable mistake of fact on his part that would lead him to believe his touching was not

offensive to KI. KI's testimony provided the evidence of this offense. Her description of how she abruptly terminated the conversation in her tent—after Appellant began to steer the conversation toward sexual topics—after making a vaguely reassuring comment in no way invited Appellant to massage her neck or grab her shoulder for a hug, then or afterwards in the dining facility. Appellant argues trial defense counsel's opening statement and argument "suggest the defense theory of the case was mistake of fact as to consent, entitling Appellant to an instruction on the issue." However, counsel's opening statement and closing argument are not evidence, and are not enough to put mistake of fact "in issue." *See Stanley*, 71 M.J. at 61 (citation omitted).

### b. Ineffective Assistance of Counsel

From the foregoing discussion, it is also evident trial defense counsel were not ineffective for failing to request an instruction on mistake of fact. Without a factual basis for such an instruction, Appellant can demonstrate neither deficient performance nor prejudice. *See Datavs*, 71 M.J. at 424 (citation omitted); *Gooch*, 69 M.J. at 362 (citation omitted).

Although trial defense counsel did not defend the assault consummated by a battery specification on the basis of mistake of fact, it does not follow that they failed to provide Appellant any defense at all. We acknowledge the evidence put trial defense counsel in a challenging position. With no evidence to contradict KI, and having apparently concluded the court members would find her credible, trial defense counsel conceded KI gave "a pretty creditable account statement of what happened." However, trial defense counsel cited the very openness of Appellant's action in front of multiple witnesses, coupled with the Government's failure to call any other witness to the event and the absence of evidence of any alarmed reaction by anyone present other than KI, to minimize the severity of the acts. Trial defense counsel also suggested this incident, standing alone, would not warrant a court-martial prosecution. Thus, if the members were inclined to agree, they might have concluded the Government had failed to prove the touching was by some objective standard "offensive"— a term the military judge did not further define—or otherwise did not warrant conviction. Although perhaps not a compelling argument, it was a reasonable one to make under the circumstances, and not "reasonably below" the performance to be expected of defense lawyers. Moreover, even if it were deficient, Appellant has not identified any other course that offered a reasonable probability of a more favorable result. *See Gooch*, 69 M.J. at 362 (citation omitted).

### c. Factual Sufficiency

Finally, we readily find Appellant's conviction for assault consummated by a battery to be factually sufficient. KI's testimony was clear and evidently cred-

ible; the Defense does not substantially challenge it at trial or on appeal. Appellant concedes assault consummated by battery is a general intent crime. *See United States v. Singletary*, 33 C.M.R. 358, 362 (C.M.A. 1963) (citation omitted). Therefore, Appellant need only have intended to commit the act that constituted the offense, and the evidence raises no question that he intentionally touched KI. *See McDonald*, 78 M.J. at 380 ("general intent" mens rea requires "only the general intent to do the wrongful act itself"). We find no basis to conclude he was honestly and reasonably mistaken in a way that would cause him to believe his actions were not offensive. The fact that Appellant acted brazenly does not demonstrate an honest or reasonable mistake on his part.

## G. Post-Trial Delay

### 1. Additional Facts

Appellant's trial concluded on 30 March 2018. The convening authority initially took action on the court-martial 119 days later, approving the adjudged sentence on 27 July 2018. Six days later, on 2 August 2018, the convening authority withdrew the original action and again approved the adjudged sentence. Appellant's case was initially docketed with this court on 22 August 2018. Appellant filed his initial assignments of error on 13 February 2019, and the Government filed its answer on 5 April 2019. On 3 May 2019, this court set aside the convening authority's action, returned the record to The Judge Advocate General for remand to the convening authority, and directed new post-trial processing due to error in the staff judge advocate's recommendation.

On remand, the convening authority took new action on 15 July 2019, this time deferring the adjudged reduction in grade for a period of six months and waiving mandatory forfeitures of pay and allowances until the earlier of six months or Appellant's release from confinement. The record was re-docketed with this court on 30 July 2019. On 9 August 2019, this court received a supplemental assignment of error from Appellant, and on 5 September 2019 the Government submitted its answer. On 30 September 2019, the court heard oral argument on the second issue raised by Appellant. On 24 February 2020, Appellant filed at second supplemental assignment of error, seeking relief for unreasonable appellate delay.

### 2. Law

In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), the CAAF identified thresholds for facially unreasonable delay for particular stages of the post-trial and appellate process. Specifically, the CAAF established a presumption of facially unreasonable post-trial delay where the convening authority does not take action within 120 days of the completion of trial, where the record is not docketed with the court of criminal appeals within 30 days of the con-

vening authority's action, or where the court of criminal appeals does not render a decision within 18 months of docketing. *Id.* Such a facially unreasonable delay triggers an analysis of four factors to assess whether Appellant's due process right to timely post-trial and appellate review has been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *Id.* (citations omitted).

### 3. Analysis

Appellant argues he is entitled to relief due to delays at both the pre-action and appellate stages of post-trial review. We consider each argument in turn.

First, Appellant contends the 472 days that elapsed between the conclusion of his trial on 30 March 2018 and the convening authority's final, post-remand action on 15 July 2019 was a presumptively unreasonable post-trial delay that warrants relief because it exceeded the 120-day standard for unreasonable sentencing-to-action delay the CAAF articulated in *Moreno*. However, Appellant cites no decision by the CAAF or this court that applies the 120-day standard to a new, post-remand convening authority action after a case has been docketed with and acted on by a court of criminal appeals. On the contrary, in the past this court has rejected such an interpretation. *See United States v. Zegarrundo*, No. ACM S32430 (f rev), 2019 CCA LEXIS 250, at *5–6 (A.F. Ct. Crim. App. 13 Jun. 2019) (unpub. op.); *United States v. Bailon*, No. ACM 36912 (f rev), 2009 CCA LEXIS 149, at *3–4 (A.F. Ct. Crim. App. 29 Apr. 2009) (unpub. op.). As we stated in *Bailon*:

> When, as here, an appellate court rules on an appeal and grants the appellant relief by returning the case for further processing, the *Moreno* clock is reset for the new processing and appeal periods that follow. To hold otherwise would subject virtually every case in which an appellant pursued a successful appeal that resulted in additional lower-level processing to the *Moreno* presumptions. We do not believe that was the intent of the *Moreno* Court.

*Bailon*, unpub. op. at *4. We see no reason to reach a different conclusion now. Rather, we conclude *Moreno* continues to apply after remand by this court, but the "120-day clock" starts once the record is returned to the convening authority. *See Zegarrundo*, unpub. op. at *6. In this case, only 73 days elapsed between this court's issuance of the remand order on 3 May 2019 and the new action on 15 July 2019; the period between actual receipt of the record by the

convening authority and the new action obviously could not have been greater than that. Accordingly, we conclude the post-remand post-trial processing of Appellant's case did not involve a facially unreasonable delay under *Moreno*.[13]

Second, Appellant asserts he should receive relief, even absent any showing of prejudice, because over 18 months have elapsed from the time his case was originally docketed with this court, triggering a presumption of unreasonable delay under *Moreno. See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). For purposes of analysis, we will assume without deciding that it is appropriate to measure the 18-month *Moreno* standard from the date Appellant's case was originally docketed on 22 August 2018, rather than the date the case was re-docketed on 30 July 2019 after the remand. Nevertheless, we are not persuaded that relief is warranted.

The court has not been idle with respect to Appellant's case. Within a month of receiving the Government's answer to Appellant's initial assignments of error, the court granted relief on an issue raised by Appellant and directed a new post-trial process and action. Within two months of the case's re-docketing, the court received supplemental briefs from both parties and, at Appellant's request, heard oral argument. The court's opinion, addressing numerous factually complex issues derived from a lengthy record of trial, is being issued within six months of the oral argument, and within a week of the 18-month mark. Having considered the factors the CAAF identified in *Moreno*, we find no violation of Appellant's due process rights. 63 M.J. at 135; *see also United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006) (holding that where an appellant has not shown prejudice, there is no due process violation unless the post-trial delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system"). In addition, we do not find the length of the appellate process has rendered the sentence inappropriate such that we should exercise our authority under Article 66, UCMJ, to grant relief in the absence of a due process violation. *See United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

---

[13] Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for this post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court